# Wytheville.

## SOUTHERN RAILWAY COMPANY v. SIMMONS.

June 14, 1906.

1. PLEADING—*Declaration—Duplicity—General Demurrer.*—Duplicity in a declaration is a defect of form only, and cannot be taken advantage of by a general demurrer, and special demurrers have been abolished in this State except as to pleas in abatement.

2. PLEADING—*Declaration—Reference to Regulations—Substance.*— Where reference is made in a declaration against a railroad company to the rules, orders and requirements of the company, it is not necessary that they should be set out in their exact terms. It is sufficient to aver their legal effect.

3. RAILROADS—*Automatic Coupler—Act of Congress.*—The act of Congress regulating the couplings to be used on cars moving interstate traffic requires the use of couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars. The act sought to obviate risk by requiring the use of couplers that would *actually* couple automatically by impact, and while no particular design was required it was intended that the couplings used by different railroads were to be effectively interchangeable. It was not intended merely to require couplings that would couple automatically after they had been fixed and made ready to be coupled.

4. EVIDENCE—*Personal Injury—Damages—Dependent Relations.*—In an action to recover compensation for a personal injury it is not permissible for the plaintiff to introduce evidence as to the number and condition of his family dependent on him for support.

5. EVIDENCE—*Improper Admission—How Corrected—Instructions.*— While the admission of improper evidence may be corrected by instructions given by the court to the jury, directing them to disregard it, its withdrawal from the jury should be in terms so direct and explicit as to leave no room to apprehend that the jury are not informed with respect to it.

6. RAILROADS—*Coupling Cars—Negligence—Question for Jury—Case at*

*Bar.*—Whether an injury inflicted on a brakeman while coupling cars was the result of his own contributory negligence or of the negligence of other servants of the railroad company is a question of fact for the jury. In the case at bar there is no evidence that such other servants had knowledge of the dangerous position of the plaintiff immediately before the accident, and might, by the exercise of ordinary care, have prevented it.

7. BILL OF EXCEPTION—*Withdrawal of Objection.*—There is no merit in an exception to an adverse ruling of the court on an objection to a particular line of argument, where, during the continuance of the argument, the objection is withdrawn and counsel is offered the opportunity to make any comments or criticism he may desire.

8. ARGUMENT OF COUNSEL—*Latitude—Restriction—Exceptions.*—While great latitude is allowed argument of counsel, and they should be allowed to present every view of the evidence which ought to fairly and legitimately influence the jury in arriving at a verdict, they should not be permitted to excite and inflame the minds of the jury against one of the litigants, nor appeal to their passions and prejudices, and if, when such an argument is made and the trial court is appealed to, it fails to take proper steps to correct its ill tendencies, and an exception is taken at the proper time, it is good ground for reversing the judgment and setting aside the verdict.

Error to a judgment of the Circuit Court of Brunswick county, in an action of case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*A. P. Thom, W. L. Williams, E. R. Turnbull, Jr.,* and *R. T. Thorp,* for the plaintiff in error.

*C. J. Faulkner* and *Buford, Palmer & Eggleston,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

There was a judgment against the Southern Railway Company at the suit of Simmons for injuries which he had sustained while acting as a brakeman in the service of the railway company and engaged in coupling cars at Lawrenceville. To that judgment the railway company obtained a writ of error.

The railway company demurred to the declaration and to each count, and its first assignment of error is to the judgment of the Circuit Court in overruling its demurrer.

The objection made to the first count is that it not only charges negligence on the part of the company in the employment of its servants, but negligence on the part of the servants themselves; that the negligence of the company and that of its servants constitute two separate and distinct causes of action, and should not have been combined in one count.

In *Norfolk & Western R. Co.* v. *Ampey,* 93 Va. 121, 25 S. E. 226, this court said: "The foundation of the objection to the declaration is that the first count alleges three distinct grounds of negligence as the cause of the injury sustained by the plaintiff, either of which would of itself, independently of the others, constitute a sufficient ground for the action. In other words, the claim is that the count is bad for duplicity. The grounds so stated are the negligence of the defendant in failing to exercise due care in selecting competent servants, in failing to provide a sufficient number of train hands, and in failing to supply and maintain suitable and safe machinery and instrumentalities for the conduct of the business of the defendant. They are conjunctively alleged as concurrent causes which, co-operating together, produced the injury. It is very questionable whether this constitutes duplicity. It is stated by eminent text-writers on the subject of pleading that no matters, however multifarious, will operate to make a pleading double that together constitute but one connected proposition

or entire point. But even if this count were obnoxious to the charge of duplicity, the fault could not be taken advantage of on a general demurrer. The objection for duplicity relates to matter of form only, and does not go to the substance of the pleading. Being an objection to the form and not to the substance of the declaration, it could only be availed of, even at common law, with all of its rigid rules of pleading, by special demurrer."

This assignment of error is not well taken.

The demurrer to the second count rests upon the omission of the count to state specifically the rules, orders and requirements of the railroad company which are therein referred to, and because "the act of Congress referred to does not require the defendant, in the operation of cars engaged in interstate commerce, to employ cars provided with such couplers as will couple automatically without any necessity for brakemen ever going in between the cars. The only thing that the act required was that the couplings should be of such a nature that after they had been fixed and were ready to be coupled that there should be no necessity for being in between the cars at the time when they came together. The allegation of the count imposes upon the company a duty which the law does not impose, and is, therefore, bad on demurrer."

We do not think that it is necessary, in a declaration where reference is made to the rules, orders and requirements of a railroad company, that they should be set out *in totidem verbis,* it being sufficient to aver the legal effect of such rules, orders and requirements.

As to the second objection to the count it seems to be disposed of by the opinion of Chief Justice Fuller in *Johnson* v. *Southern Pacific Company,* 196 U. S. 1. That decision construes the second section of the act of Congress of March 2,

1893, entitled "An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes and their locomotives with driving-wheel brakes, and for other purposes." The second section is as follows:

"That on and after the first day of January, 1898, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers, coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

It will be observed that the declaration in this case gives the very language of the act of Congress, and avers that it "was the duty of the said defendant, as such common carrier, not to haul or permit to be hauled or used on its said line of railroad any car used in moving interstate traffic not equipped with couplers, coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The railroad company made the same point in the *Johnson Case* that is insisted upon here by the plaintiff in error; and its view prevailed in the Circuit Court, the judgment of which, in favor of the railroad company, was affirmed in the Circuit Court of Appeals; but the Supreme Court of the United States, dealing with the subject, said: "We are unable to accept these conclusions" (speaking of the results in the lower courts), "as they appear to us to be inconsistent with the plain intention of Congress, to defeat the object of the legislation, and to be arrived at by an inadmissible narrowness of construction. The intention of Congress, declared in the preamble and in sections 1 and 2 of the act, was 'to promote the safety of employees and

travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes and their locomotives with driving-wheel brakes,' those brakes to be accompanied with 'appliances for operating the train-brake system'; and every car to be 'equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars,' whereby the danger and risk consequent on the existing system was averted as far as possible.

"The present case is that of an injured employee, and involves the application of the act in respect of automatic couplers, the preliminary question being whether locomotives are required to be equipped with such couplers. And it is not to be successfully denied that they are so required if the words 'any car' of the second section were intended to embrace, and do embrace, locomotives. But it is said that this cannot be so, because locomotives were elsewhere, in terms, required to be equipped with power driving-wheel brakes, and that the rule that the expression of one thing excludes another applies. That, however, is a question of intention, and as there was special reason for requiring locomotives to be equipped with power driving-wheel brakes, if it were also necessary that locomotives should be equipped with automatic couplers, and the word 'car' would cover locomotives, then the intention to limit the equipment of locomotives to power driving-wheel brakes, because they were separately mentioned, could not be imputed. . . .

"The result is that if the locomotive in question was not equipped with automatic couplers, the company failed to comply with the provisions of the act. It appears, however, that this locomotive was in fact equipped with automatic couplers, as well as the dining car; but that the couplers on each, which

were of different types, would not couple with each other automatically by impact, so as to render it unnecessary for men to go between the cars to couple and uncouple.

"Nevertheless, the Circuit Court of Appeals was of opinion that it would be an unwarrantable extension of the terms of the law to hold that where the couplers would couple automatically with couplers of their own kind the couplers must so couple with couplers of different kinds. But we think that what the act plainly forbade was the use of cars which could not be coupled together automatically by impact by means of the couplers actually used on the cars to be coupled. The object was to protect the lives and limbs of all railroad employees by rendering it unnecessary for a man operating the couplers to go between the ends of the cars; and that object would be defeated, not necessarily by the use of automatic couplers of different kinds, but if those different kinds would not automatically couple with each other. The point was that the railroad companies should be compelled, respectively, to adopt devices, whatever they were, which would act so far uniformly as to eliminate the danger consequent on men going between the cars.

"If the language used were open to construction we are constrained to say that the construction put upon the act by the Circuit Court of Appeals was altogether too narrow."

After answering the objection that the act was to be construed strictly because the common law rule as to the assumption of risk was changed by the act, and because the act was penal, the opinion continues: "Tested by these principles we think the view of the Circuit Court of Appeals, which limits the second section to merely providing automatic couplers, does not give due effect to the words 'coupling automatically by impact, and which can be uncoupled without the necessity of men going between the cars,' and cannot be sustained.

"We dismiss, as without merit, the suggestion which has been made that the words 'without the necessity of men going between the ends of the cars,' which are the test of compliance with section 2, apply only to the act of uncoupling. The phrase literally covers both coupling and uncoupling, and if read, as it should be, with a comma after the word 'uncoupled', this becomes entirely clear.

"The risk in coupling and uncoupling was the evil sought to be remedied, and that risk was to be obviated by the use of couplers actually coupling automatically. True, no particular design was required, but, whatever the devices used, they were to be effectively interchangeable. Congress was not paltering in a double sense; and its intention is found 'in the language actually used, interpreted according to its fair and obvious meaning.' "

That case disposes of the second count of the declaration.

The next assignment of error arises upon an exception taken by the plaintiff in error to a question propounded to the defendant in error by his counsel.

Q. Are you a married man? A. Yes, sir.

Q. Have you any children?"

At this point defendant's counsel interposed, and said: "We do not see what that has to do with it, unless the gentleman is suing for some injury to his wife and children"; upon which counsel for plaintiff replied: "I think it is a perfectly admissible question to show that Mr. Simmons, who is a husband and a father, does not live for himself alone, and when he is incapacitated it seems to me that it is a relevant question, upon the *quantum* of damages, for the jury to know not only that he has to provide for himself through life hereafter, maimed as he is, but that he has a wife and child dependent upon him." And thereupon the court overruled the objection of the de-

fendant and permitted the plaintiff to state the number of his children, which consisted of one, twelve or thirteen years of age; and to this ruling of the court the defendant excepted.

The question seems to be settled by authority. In *Stockton* v. *Frey,* 4 Gill (Md.), at p. 406, it is said that "In an action to recover compensation for injuries done to the person of plaintiff, by the negligence of the driver of a stage, which was thereby upset, the plaintiff cannot give in evidence, for the purpose of increasing the damages, that he had a wife and children."

In Sedgwick on Damages (8th ed.), sec. 490, it is stated that damages cannot be augmented by proof that the person injured has a wife and several small children.

*Pennsylvania Railroad Co.* v. *Roy,* 102 U. S. 451, is a strong authority to the same effect. In that case, Mr. Justice Harlan, speaking for the entire court, said: "There was, however, an error committed upon the trial, to which exception was duly taken, but which does not seem to have been remedied by any portion of the charge appearing in the bill of exceptions. The plaintiff was permitted, against the objection of the defendant, to give the number and ages of his children; a son ten years of age, and three daughters of the ages, respectively, of fourteen, seventeen and twenty-one. This evidence does not appear to have been withdrawn from the consideration of the jury. It certainly had no legitimate bearing upon any issue in the case. The manifest object of its introduction was to inform the jury that the plaintiff had infant children dependent upon him for support, and, consequently, that his injuries involved the comfort of his family. This proof, in connection with the impairment of his ability to earn money, was well calculated to arouse the sympathies of the jury, and to enhance the damages beyond the amount which the law permitted; that is, beyond what was,

under all the circumstances, a fair and just compensation to the person suing for the injuries received by him. How far the assessment of damages was controlled by this evidence as to the plaintiff's family it is impossible to determine with absolute certainty; but the reasonable presumption is that it had some influence upon the verdict.

"The court, in a manner well calculated to attract the attention of the jury, withdrew from their consideration the evidence touching the financial condition of the plaintiff; but as nothing was said by it touching the evidence as to the ages of his children, they had the right to infer that the proof as to those matters was not withdrawn and should not be ignored in the assessment of damages. For this error alone the judgment is reversed, and the cause remanded for a new trial."

It is claimed on behalf of defendant in error that the case should not be reversed upon this assignment of error, because there was other evidence admitted, without objection, to the effect that the plaintiff was a married man; but there is no other evidence in the record of the existence of a child dependent upon Simmons for support.

Nor do we think that this court is committed to the doctrine by reason of anything that was said in *N. & W. Ry. Co.* v. *Ampey, supra,* or in *Southern Ry. Co.* v. *Oliver,* 102 Va. 710, 47 S. E. 862. In the opinions in both cases the fact that the person injured had others dependent upon him for support is adverted to; but it does not appear that any exception was taken to the admissibility of the testimony, and the propriety of admitting such testimony is not adverted to by the court in either case.

Nor do we think that the error in admitting this evidence is cured by the instruction given to the jury, which states that if the jury find for the plaintiff "they should ascertain his

damages not to exceed the sum claimed in the declaration, to-wit: $50,000.00; and in estimating such damages the jury may allow such sum as they may believe from the evidence will be a fair compensation for such bodily and mental suffering as the plaintiff may have been caused by the said injury; and they may also allow such sum as may compensate him for the future loss of his earning capacity, so far as the jury may believe from the evidence that he has suffered a loss of his earning capacity as a result of said injury; and they may also allow such sum as will enable him to relieve or mollify the inconvenience occasioned by the said injury, if they believe from the evidence that he will in the future experience such inconvenience." The jury are not there told that in estimating his damages they are not to consider the fact that a child is dependent for its support upon the earning capacity of Simmons; and the jury would rightly and properly, upon the evidence before them, have taken that fact into consideration in their estimate of the damages suffered. We are of opinion that while the admission of improper testimony may be corrected by instructions given by the court to the jury, directing them to disregard it, its withdrawal from the jury should be in terms so direct and explicit as to leave no room to apprehend that the jury were not informed with respect to it. Where that is done it is not to be presumed that the jury were "too ignorant to comprehend or too unmindful of their duty to respect instructions as to matters peculiarly within the province of the court to determine." *Penna. R. Co.* v. *Roy, supra.*

Numerous instructions were given to the jury, two of which we think were erroneous.

"The court instructs the jury that if they believe from the evidence that the plaintiff had undertaken the business of coupling and uncoupling cars, then it was the duty of the plain-

tiff, while coupling and uncoupling cars, to exercise such care as a reasonably prudent man would exercise under like circumstances; and if the jury believe from the evidence that the plaintiff, Simmons, knew, or, by exercising such care as a reasonably prudent man would exercise under the circumstances, could have known, that engines were backing cars on the track where he was about to couple cars, and that, under the circumstances, he went in between the cars and that his failure to exercise such care contributed to his injuries, then the said plaintiff was guilty of contributory negligence."

Down to this point we think the instruction correctly propounded the law. But the court made the following addition to it: "And if they so believe, the jury must find for the defendant, unless they further believe from the evidence that Conductor Floyd had knowledge of the dangerous position of the plaintiff immediately before the accident, and might have, by the exercise of ordinary care, prevented the same." And this is the portion of the instruction which we think is open to objection.

Simmons was injured by going in between two cars, which were separated the one from the other by about three feet of space. Just as he got in between the cars and was arranging the couplers, the engineer, acting under a signal from the conductor, backed the cars upon him, with the result that both of his legs were crushed. Now, if either the conductor or the engineer were guilty of negligence in backing the engine and cars so as to inflict the injury which Simmons sustained, he was entitled to recover; but there was no evidence, and in the nature of things could be no evidence, that the conductor or the engineer had knowledge of the dangerous position of the plaintiff immediately before the accident, and might, by the exercise of ordinary care, have prevented it. The theory of

defendant in error's case upon this point was that when he was sent back to couple the cars the conductor knew, or ought to have known, 'his position and governed himself accordingly, so as not to back the cars and catch him (Simmons) while engaged, in accordance with the rules of the company and the orders which he had received from the conductor, in preparing the cars to be coupled. That is the view of the case upon which defendant in error insists. Plaintiff in error, however, claims that in going in between the cars the defendant in error was guilty of contributory negligence; and that view of the case is presented in the introductory part of this instruction, and if it existed constituted a defense to the action. It was for the jury to say which of the two theories was sustained by the facts.

Whether the defendant in error was in a position of danger, in obedience to the orders of the conductor and in the discharge of his duties, or whether he was there, as plaintiff in error insists, as a result of his own contributory negligence, it is certainly true that there is nothing in the situation upon which to rest the doctrine of the last clear chance. If the railroad company, or its agents, were guilty of negligence, defendant in error should recover; if defendant in error was guilty of contributory negligence, that should be an end to his action.

Which of the two theories should prevail was a question for the jury upon the facts; but certain it is that neither the conductor nor the engineer had such knowledge of the position of defendant in error as to render the railway company responsible for their failure to protect him from the consequences of his contributory negligence after his position of danger was known.

The instruction concludes as follows: "But the jury, in determining whether the plaintiff was guilty of contributory negligence, are instructed that the plaintiff had the right to pre-

sume that the defendant company would conduct its business with reasonable regard to its rules prescribing his duties, and with reasonable care for his safety while performing his duties"; all of which was entirely proper.

We are of opinion, therefore, that the instruction would have been correct had it omitted the words: "and if they so believe, the jury must find for the defendant, unless they further believe from the evidence that Conductor Floyd had knowledge of the dangerous position of the plaintiff immediately before the accident, and might have, by the exercise of ordinary care, prevented the same."

Instruction "C" is open to the same objection; and if upon another trial the evidence upon this point should be substantially the same as that in the record under consideration, and instructions "A" and "C" are again offered, they should be made to conform to the views herein expressed.

The fourth bill of exception arises upon the examination of S. W. Simmons, the plaintiff, as a witness in his own behalf. On his direct examination he testified that he was thirty-nine years of age on the day before he was injured, and during the progress of the case a paper was introduced from which it appears that when he entered the service of the railway company he had made a conflicting statement as to his age. Counsel for the railway company undertook to criticise this apparent discrepancy in his argument before the jury; whereupon the point was made by counsel for the plaintiff that he should not be permitted to do so, as the discrepancy had not been brought to the attention of plaintiff when the paper was introduced in evidence, so as to afford him an opportunity of making an explanation; and this view was taken by the Circuit Court. Counsel for the railway company was told that he would be permitted to recall the witness and ask him any question he

might desire with reference to the subject, but this he declined to do; and thereupon the court refused to permit counsel to continue his line of argument. It seems that the court at that point adjourned for two days, and when argument was resumed counsel for plaintiff withdrew their objection and stated that counsel could proceed to make any comments or criticism he might desire in his argument before the jury; to which counsel for defendant replied that they did not desire to make any further criticism of the witness, but insisted upon their exception, which was signed and made a part of the record.

We confess our utter inability to discover any trace of merit in this exception, and are at a loss to understand why the record should have been encumbered by it.

Another exception was taken to the line of argument pursued by counsel for defendant in error before the jury. It seems that after the argument had been closed and the jury had retired to their room to consider of their verdict, counsel for plaintiff in error stated to the court that counsel for defendant in error in his closing argument had made certain statements to the jury not based upon any evidence in the cause, and presented a memorandum in writing, setting forth what he claimed to be the statements so made. Among other things it was stated that counsel had expressed the fear that the railroad employees who had testified against the company would lose their places, although there was no evidence on this point; that counsel for the railroad company rode in private and palace cars when they came to court, although there was no evidence on this point; that the mind could not grasp the extent of the resources and possessions of the Southern Railway Company, while Mr. Simmons was a poor man with nobody but his wife and child, and with no one to help him but his wife; that

the treasury of the railway company was so exhaustless that it would hardly feel the loss of $50,000, the amount claimed in the declaration; and that in estimating damages they should take into consideration the fact that exceptions had been taken by the defendant, and that it had been stated that if the verdict was against it, it would appeal.

The court, with respect to this memorandum, says that its language is that of counsel for the defendant, and is not the exact language used by plaintiff's counsel in addressing the jury; and that it would be impossible, without an accurate report of the argument, for the court to certify what the language used was. From all of which we infer that the language imputed to counsel is substantially that which had been used by him in argument.

Great latitude is allowed in arguments before juries, and we have no disposition to impose unreasonable conditions upon its exercise, or to hamper counsel in the slightest degree in the fullest and freest discussion of every fact and every view of the evidence which ought fairly and legitimately to influence the jury in arriving at a verdict. But the line of argument pursued in this case could have no other motive or object than to excite and inflame the minds of the jury against one of the litigants, and thereby to heighten the damages to be awarded. It was in a high degree improper, and had the attention of the court been called to it, counsel would doubtless have been restrained within just and proper limits, and the jury have been admonished to free their minds from considerations aroused by appeals to their passions and prejudices, and to confine themselves to ascertaining, in the light of the evidence and of legitimate argument, what would be a fair and just compensation to the plaintiff for the injuries he had sustained. Such a line of argument, if proper objection be made to it at the proper

time and the trial court fails to take proper steps to correct its ill tendencies, will constitute a sufficient ground for reversing a judgment rendered upon a verdict thus obtained.

For the errors in the admission of testimony, and with respect to instructions "A" and "C," the judgment of the Circuit Court must be reversed.

*Reversed.*