# Richmond.

CHESAPEAKE AND OHIO RAILWAY CO. v. GHEE'S ADMINISTRA-
TRIX.

January 13, 1910.

Absent, Buchanan, J.

1. DEATH BY WRONGFUL ACT—*Evidence—Pecuniary Condition of Plain-
tiff.*—In an action for death by wrongful act or neglect, evidence
of the pecuniary condition of the deceased at the time of his
death is inadmissible. Such evidence is calculated to excite the
sympathy of the jury, and, if received, is presumed to have
wrongfully affected the verdict.

2. MASTER AND SERVANT—*Railroads—Personal Injury—Instructions—
Partial View of Evidence.*—Where an employee of a railroad com-
pany is killed in a tunnel rendered so dark by the smoke from a
passing train that a lantern would cast a light only a few feet,
an instruction which points out with particularity the care and
precautions owing by the company, but ignores the duty that
rested upon the decedent to exercise a higher degree of care for
his own safety than under ordinary conditions, is erroneous and
should not be given.

3. MASTER AND SERVANT—*Mutual Duty of Care—Ordinary Work.*—An
employee working in a tunnel from time to time filled with
smoke from passing trains is engaged in work which is ordinary
as regards the relation of employer and employee to each other,
and the one is as much required to exercise care commensurate
with the danger of the situation as the other.

4. MASTER AND SERVANT—*Instructions—Evidence to Support.*—An in-
struction defining the duty of one who has placed another in a
position of peril is clearly erroneous where there is no evidence
which proves or tends to prove that the injured party was placed
in a position of peril by any act of commission or omission on the
part of the person sought to be held liable for the injury.

5. MASTER AND SERVANT—*Negligence—Contributory Negligence—Ignor-
ance of Danger.*—A plaintiff cannot recover if he is guilty of neg-
ligence proximately contributing to the injury of which he com-
plains, although the danger to which he was exposed was not so

plain and clear that he was necessarily at fault in not apprehending it.  Negligence may be independent of danger.

6. DEATH BY WRONGFUL ACT—*Elements of Damage.*—In an action by a widow to recover for the wrongful death of her husband the jury may, in addition to the pecuniary loss sustained by her, add compensation for the loss of his care, attention and society, and also such further sum as they may deem fair and just by way of solace and comfort to her for the sorrow, suffering and mental anguish occasioned to her by his death.

7. MASTER AND SERVANT—*Railroads—Warnings—Customary Warnings—Reasonable Precautions.*—Where, in an action against a railroad company to recover for the death of an employee alleged to have been occasioned by the failure to give proper warning of the approach of one of its trains through a tunnel filled with smoke, the company asks an instruction that the jury shall find for the defendant if they believe that certain designated warnings were given, and these were the usual and customary warnings, it is not error for the court to add "and were in themselves reasonable precautions under all circumstances and facts of this case to be taken for the safety of employees working in the tunnel."

8. INSTRUCTIONS—*Jury Fully Instructed.*—It is not error to refuse to instruct on a point already sufficiently covered by other correct instructions given in the case.

9. DEATH BY WRONGFUL ACT—*Avoiding Injury—Conduct of Prudent Persons—Instructions.*—Where an instruction tells the jury they must find for the defendant, if they believe the plaintiff's intestate would have avoided injury if he had adopted a designated course of conduct, it is not error for the trial court to add "and that a reasonably prudent person, under the facts and circumstances of this case, would and should have done so."

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case.  Judgment for the plaintiff.  The defendant assigns error.

*Reversed.*

The following instruction on the measure of damages was given at the instance of the plaintiff:

"(H) The court instructs the jury that if they believe from the evidence that plaintiff should recover damages of the defendant company, they should find for the plaintiff and assess the damages for such killing at such sum as they may deem

fair and just under all the circumstances of the case, such damages not to exceed $10,000.00. In ascertaining such damages the jury should find for same with reference—

"(1) To the pecuniary loss sustained by Mary Ghee, wife of George Ghee, by the death of said George Ghee, fixing the same at such sum as would be equal to the probable earnings of the said George Ghee, taking into consideration the age, business capacity, experience, habits, energy and perseverance of the deceased during what would probably have been his lifetime and the lifetime of the said Mary Ghee, if he had not been killed.

"(2) In ascertaining the probability of life, the jury have a right to determine the same in reference to recognized scientific tables relating to the expectation of human life.

"(3) By adding thereto compensation for the loss of his care, attention and society to his wife, and

"(4) By adding such further sum as they may deem fair and just by way of solace and comfort to his wife for the sorrow, suffering and mental anguish occasioned to her by his death."

This instruction was objected to for the following reasons:

"Instruction 'H' given by the court is taken from the Noel case, 32 Gratt. 394. A reading of the cases decided by this court since *Mathews* v. *Warner,* 29 Gratt. 570, shows that the correctness of this instruction has been doubted. Does the statute contemplate compensation or punishment to the wrongdoer in addition to compensation? There can be no reasonable doubt that the object of the statute was to make compensation for the loss sustained by the beneficiaries named. That compensation from the necessity of the case is pecuniary, and when the jury has been told they can give all the man would have earned had he lived, they have reached the limit of compensation to the beneficiaries for the loss of the decedent, and for them to be allowed to add to this amount two other amounts for things not measurable in dollars and cents authorizes them to pass into the realm of punishment. See Judge Staples' dissent

in Noel case. This matter has been frequently brought to the attention of the court, and is only mentioned now to prevent it being considered that the writer acquiesces in the correctness of this line of decisions."

*Henry Taylor, Jr.,* for the plaintiff in error.

*Bibb & Bibb,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The widow and personal representative of George Ghee, deceased, brought this action and recovered a judgment against the Chesapeake and Ohio Railway Company for $2,000 damages for the death of the decedent, caused, as alleged, by the negligence of the defendant.

George Ghee was, on March 30, 1907, and for a month or more previous to that date, an employee of the Chesapeake and Ohio Railway Company, together with other laborers engaged in putting down a double track for the defendant company in and through Alleghany tunnel. The work had progressed to the point where the ties and rails of the new track had been laid, but the track had not been lined up, and the laborers were engaged on the day of this accident to Ghee in loading flat cars with material gotten from each side of the new track, called the "eastbound" track, and they had been so engaged since early in the morning, but had not entirely loaded the cars. A freight train passed through the tunnel just before time for the laborers to stop for dinner—that is, about twelve o'clock—when the men were ordered to go out the east end of the tunnel and get dinner. This freight train had an engine in front and one pushing behind, and when this is the case the tunnel is so filled with smoke that no work can be done for some time, varying from a half to one and a half hours. When it was ascertained that this train would pass through the tunnel

and the laborers were directed to stop work and get their dinner, they were also directed to put their tools on the flat cars which stood on the eastbound track and had not been completely loaded. This they did, and all of the laborers except Ghee passed out of the tunnel before the freight train going east passed them, or they were passed by the train when so near the east portal of the tunnel as to be in the daylight. The camp cars to which the laborers were going for dinner were some distance from the east portal of the tunnel, and the engine of the work train to which the cars being loaded belonged was at Tuckahoe, a station just west of the tunnel. The conductor of the work train, as seems to have been usual, put one of the brakemen on the freight train with a staff to go through to the telegraph office on the east side of the tunnel, thereby providing that no train should pass through the tunnel until he came through with the engine and flat cars to the telegraph office, as the new track had not been lined up and it was not safe for two trains to pass in the tunnel with the track in that condition. The object in going through with the work train was that the train crew might get their dinner, and get the flats on which the laborers had been working for some hours unloaded, and the engine to push this train started through on the new track some minutes after the freight had passed, sounding its whistle as it entered the tunnel and ringing its bell all the way through. The evidence is conflicting as to whether or not it was the custom of the defendant to move these flat cars until they were fully loaded. However, the engine was attached to the west end of the flat cars standing on the eastbound track in the tunnel, and moved forward slowly, the smoke being so dense and making the darkness so great that a lighted torch or lantern could not be seen farther than from three to five feet, and did not enable a person to see an object by it at all. The engine moved very slowly until it reached the cars and coupled to them, and then pushed them on east out of the tunnel, coming out of the east end of the tunnel about two minutes behind the freight train which had just preceded it.

When he and his colaborers were ordered out of the tunnel to get their dinner, Ghee, instead of going for his, asked a companion to bring it to him, and upon his not appearing for dinner search was made for him and he was found dead, lying on the north end of the ties alongside of the rail about three hundred feet from the east portal of the tunnel, having been run over by the cars.

The darkness caused by the smoke usual after a train passes through the tunnel is very great, and while it lasts it is dangerous to be on the tracks, as one cannot see and lights cannot be seen, and therefore the men were all frequently told that when this was the case to get out of the track and clear themselves between the tracks and the walls of the tunnel, which was a safe place, but disagreeable on account of water and mud on the side. Ghee was working with the gang which was nearest to the east portal of the tunnel, according to the defendant's view of the evidence, but farthest from the east portal, according to the plaintiff's view of the evidence; but for some reason not explained in the evidence Ghee did not pass out of the tunnel along with the other laborers. All of the other laborers had time to reach the east portal of the tunnel, or very near thereto, before the freight train passed; some of the foremen being within two hundred feet of the east portal when the train passed, and it is clear from the evidence that as the material train passed along with the cars in front of the engine, the brakes were on the cars and the engine was making a loud exhaust, and that the bell was ringing; that what was being done on that day was just what was usually done, and in the usual and customary manner; that the brakemen rode from wherever they happened to be; that while in the tunnel they had their lanterns; that on this occasion the dense smoke prevented a lantern being seen but a few feet; that there was a safe place on which to walk by the sides of the track, which could have been used, and was in fact used by one of the witnesses, while others took chances; that no lights are used on engines

or cars passing through the tunnel in the day-time for the purpose of giving any warning, the warning relied on being the noise made by the train. Except that he was certainly run over by the work train, how Ghee came to be struck and run over does not appear from the evidence, but is left solely to speculation or conjecture.

The foregoing statement of facts appearing from the evidence are all that need be stated for an understanding of the questions upon which the case turns.

Three assignments of error to the rulings of the trial court are relied on: (1) The admission of certain evidence over the objection of the defendant; (2) the refusal of certain instructions and the giving of certain other instructions; and (3) the refusal of the court to set aside the verdict as contrary to the law and the evidence, because of misdirection of the jury, and because the damages are excessive.

The first assignment of error is that the plaintiff, Mary Jane Ghee, while upon the witness stand in her own behalf, was asked: "Does your husband own any land?" to which question the defendant objected, but the court overruled the objection and the witness was allowed to answer, her answer being: "Ten acres." The witness was then asked: "In whose name does the land stand?" An objection by the defendant to this question was overruled and the plaintiff was allowed to answer that it stood in the name of her deceased husband. Again the witness was asked: "Did your husband, at the time of his death, have any other property or estate?" An objection to this question by the defendant was overruled, and the witness was allowed to answer: "No, he had no other property."

We are of opinion that this evidence was irrelative and improper, and should have been excluded, since it was not material to any issue in the case. Such evidence was calculated to excite the sympathy of the jury, or, as stated by some of the courts, to stimulate their sympathy, and this sympathy well calculated to influence the jury not only as to the *quantum* of

damages they should allow, but in the determination of the question whether the case upon the evidence was for the plaintiff or the defendant. The principle that such evidence is presumed to have wrongfully affected the verdict seems to be settled by the decisions of this court.

In the case of *Southern Ry. Co.* v. *Simmons,* 105 Va. 651, 56 S. E. 459, the action was for personal injuries received by Simmons, and the number and ages of his children was the question passed on, the trial court ruling that the evidence was admissible. This court, in its opinion by Keith, P., held that it was settled that the admission of such evidence was reversible error, citing a number of authorities. The principle controlling in that case controls this.

Among the authorities cited in the *Simmons case, supra,* is *Penn. R. Co.* v. *Roy,* 102 U. S. 451, 26 L. Ed. 141, where the opinion by Mr. Justice Harlan says: "Upon the trial below, the plaintiff was allowed, against the objection of the defendant, to make proof as to his financial condition, and to show that, after being injured, his sources of income were very limited. This evidence was obviously irrelevant. The plaintiff, in view of the pleadings and evidence, was entitled to compensation, and nothing more, for such damages as he had sustained in consequence of the injuries received. But the damages were not, in law, dependent in the slightest degree upon his condition as to wealth or poverty. It is manifest, however, from the record, that the learned judge who presided at the trial subsequently recognized the error committed in the admission of that testimony. After charging the jury that the measure of plaintiff's damages was the pecuniary loss sustained by him in consequence of the injuries received, and after stating the rule by which such loss should be ascertained, the court proceeded: 'But the jury should not take into consideration any evidence touching the plaintiff's pecuniary condition at the time he received the injury, because it is wholly immaterial how much a man may have accumulated up to the time he is injured; the

real question being, how much his ability to earn money in the future has been impaired.' "

Further on, the opinion in that case says: "There was, however, an error committed upon the trial, to which exception was duly taken, but which does not seem to have been remedied by any portion of the charge appearing in the bill of exception. The plaintiff was permitted, against the objection of the defendant, to give the number and ages of his children; a son ten years of age and three daughters of the ages, respectively, of fourteen, seventeen and twenty-one. This evidence does not appear to have been withdrawn from the consideration of the jury. It certainly had no legitimate bearing upon any issue in the case. The manifest object of its introduction was to inform the jury that the plaintiff had infant children dependent upon him for support, and, consequently, that his injuries involved the comfort of his family. This proof, in connection with the impairment of his ability to earn money, was well calculated to arouse the sympathies of the jury, and to enhance the damages beyond the amount which the law permitted—that is, beyond what was, under all the circumstances, a fair and just compensation to the person suing for the injuries received by him. How far the assessment of damages was controlled by this evidence as to the plaintiff's family it is impossible to determine with absolute certainty, but the reasonable presumption is that it had some influence upon the verdict."

In the case before us there was no attempt on the part of the court to withdraw from the jury the improper evidence as to the financial condition of plaintiff's intestate, which in fact was nothing more or less than to inform the jury as to the financial condition of his widow, the plaintiff, and it cannot be said on the whole record that this error was harmless; but it is to be presumed to have wrongfully affected the verdict.

We find nothing in *Noel's Case,* 32 Gratt. 394, and the cases there cited, relied on by the plaintiff, that questions the princi-

ple enunciated in the case of *Southern Ry. Co.* v. *Simmons, supra,* and the authorities there cited.

Coming to the second assignment of error, relating to the instructions given and refused by the court: Instruction "D," given for the plaintiff over the objection of defendant, is as follows: "The court instructs the jury that it was the duty of the defendant company to use reasonable precautions for the safety of its employees, and that the more dangerous the place in which said company placed its employees to work, the greater the duty it owed them, and the greater should be the precautions taken for their safety, and if the jury believe from the evidence that the plaintiff's decedent came to his death on account of the negligence on the part of the defendant's employees in not taking proper precautions for his safety, as charged in the declaration, and that plaintiff's decedent himself was free from fault or negligence on his part, then the jury should find for the plaintiff."

The negligence charged in the declaration is (1) that no warning was given of the approach of the material train; (2) that no light was exhibited on the front end of the front car; and (3) that no lookout was stationed on the front end of the front car to warn employees of the approach of the material train. Reading instruction "D" in the light of the negligence charged in the declaration and the evidence given at the trial, it ignores the duty that rested upon the decedent to exercise, under the circumstances narrated, a higher degree of care for his own safety than under ordinary conditions attending such work, and for that reason, as well as for the want of evidence to support it, the instruction should not have been given.

Instruction "E," given for the plaintiff over the objection of the defendant, told the jury that "One may not by his own negligence, or want of proper care, place another in a perilous situation, and when sued for injuries resulting therefrom put the burden on the plaintiff of showing that he acted.

with reasonable care.   Persons in great peril are not required to exercise the presence of mind required of prudent men under ordinary circumstances, but before this rule of law has any application in a given case the evidence must satisfy the jury that the defendant's negligence, or want of proper care, placed the person in a given perilous position, and the jury must be satisfied in addition that the position was actually perilous."

This instruction was intended to apply to the facts which the evidence in this case tended to prove, the doctrine of *res ipsa loquitur;* and we fail to find in the evidence any fact testified to going to show that the plaintiff's decedent ever knew he was in peril, or any act of his under stress of peril.   The evidence fails to show that the defendant put Ghee in a perilous situation, and the only situation which the evidence shows is that the defendant placed Ghee along with others to work in a dark tunnel through which trains were likely to pass at any time. This instruction was well calculated to lead the jury to infer that the defendant, having put Ghee in this situation, he was not required to exercise presence of mind required of prudent men under ordinary circumstances.   It was a work which Ghee had undertaken to do and had been doing, and it would seem clear that the tunnel filled with smoke from passing trains, and the work being done at the time of the accident was ordinary, as regards the relation of these parties to each other, and the one was as much required to exercise care commensurate with the danger of the situation as the other; so that prudence required Ghee to exercise greater care than in ordinary circumstances.   An instruction given where there is no evidence which either proves or tends to prove that the injured party was placed in a position of peril by an act of commission or of omission on the part of the party charged with negligently causing the injury is clearly erroneous.   *N. & W. Ry. Co.* v. *Stegall,* 107 Va. 231, 57 S. E. 657.

Instruction "G," given over the objection of the defendant, told the jury that "to charge George Ghee with negligence in

this case, and to charge him with notice of his danger, the danger must have been plain and clear, so that if he did not see or apprehend it he must have been necessarily in fault."

This instruction is manifestly wrong. Ghee may have been guilty of negligence and at the same time the danger may not have been so plain and clear that he was necessarily at fault in not apprehending it; yet the jury were told that he could only be charged with negligence when the danger was so plain that he was necessarily in fault in not apprehending it. The instruction, to say the least of it, is confusing, since negligence may be independent of danger. The giving of this instruction was error.

Instruction "H," given over the objection of the defendant, relates to the damages which the jury might allow, if they found by their verdict that plaintiff's intestate came to his death by reason of the negligence of the defendant. We are unable to see the force of the objection urged to this instruction on behalf of defendant, and can see no reason for believing that it misled the jury.

Coming to the instructions asked for by the defendant and refused or modified by the court: Instruction "A" told the jury that the burden was on the plaintiff to show that her decedent was killed by the negligence of the defendant, and it being left to conjecture in this case how the plaintiff's decedent came to be run over, they must find for the defendant.

In a modified instruction "I" the court told the jury that if they believed from the evidence "that the whistle was sounded as the train went into the tunnel, and that the bell was ringing, and that the engine pushing the cars was using steam and making the noise of the exhaust, and that these were the usual and customary warnings, *and were in themselves reasonable precautions under all the circumstances and facts of this case to be taken for the safety of employees working in the tunnel,* then no negligence can be imputed to the defendant company, and they must find for the defendant."

The objection made to this instruction, as given by the court, appears in the italicised words. We do not think that the court erred in giving this instruction, or in refusing to give instruction "A."

Instruction "B" told the jury that "if they believe from the evidence that the whistle was sounded as the train went into the tunnel, and that the bell was ringing, and that the engine pushing the cars was using steam, making the noise of the exhaust, and that these were the usual and customary warnings, no negligence can be imputed to the defendant, and they must find for the defendant."

The point of this instruction is covered by instruction "I" just quoted, and instruction "J," given by the court, instruction "J" being as follows: "The court instructs the jury that the burden of proof is on the plaintiff to show by a fair preponderance of the evidence that her decedent was killed by the negligence of the defendant, and if upon the whole evidence, direct and circumstantial, the jury are left to merely conjecture as to how the decedent came to be·run over, they must find for the defendant. Negligence on part of the defendant must be proved by affirmative evidence, either positive or circumstantial, which must show more than a probability of the negligent act. A verdict cannot be founded on mere conjecture. There must be affirmative and preponderating proof of such negligence."

We are of opinion that instructions "I" and "J" sufficiently cover the point intended to be submitted by the defendant's instructions "A" and "B," and that the refusal to give the latter as asked for was not error.

Instruction "C" told the jury that "where an employee has two ways of performing an act in the course of his employment, the one safe and the other dangerous, he owes a positive duty to his employer to pursue the safe method, and any departure from the path of safety will prevent his recovery if he is injured; and if the jury believe from the evidence in this case

that the plaintiff's intestate could have gone to either the north or the south side of the tracks and there been safe from passing trains, or on the track upon which the freight train had passed, but that he did not do so, but remained upon the track upon which he was killed, and that there was danger in that position from any train passing upon said track, they must find for the defendant."

The court modified this instruction by inserting in the last line, between the word "track" and the word "they," the words "and that a reasonably prudent person, under the facts and circumstances of this case, would and should have done so."

We are unable to see the force of the objection to this modification of the instruction, and, therefore, do not consider that the court erred in so modifying it.

The remaining assignment of error relates to the refusal of the court to set aside the verdict as contrary to the law and the evidence, and to the damages allowed by the jury as being excessive. The latter part of this assignment, relating to the damages allowed by the jury, was not insisted on in this court, and as the judgment has to be reversed for the errors pointed out and the cause remanded for a new trial, we deem it inexpedient to discuss the evidence given at the last trial.

The judgment will be reversed, and the cause remanded for a new trial to be had in accordance with this opinion.

*Reversed.*