## Staunton.

## WASHINGTON-VIRGINIA RAILWAY COMPANY V. DEAHL.

### September 17, 1919.

1. DECLARATIONS AND ADMISSIONS—*Admission of Claim Agent of Railroad.*—In an action against a railroad by a passenger for injuries, a statement to the passenger by the claim agent of the railroad that the accident was caused by the breaking of the controller on the car is admissible, although the agent was not present when the accident occurred.

2. DECLARATIONS AND ADMISSIONS—*Agents—Admission of Claim Agent of Railroad.*—Information and knowledge as to the cause of an accident are peculiarly essential to a claim agent, and his declarations made in regard thereto in the course of his negotiations with a party injured by reason of the accident fall easily and plainly within the rule permitting proof of declarations made by agents within the realm of their agency, and during the transaction of business in which they are employed.

3. APPEAL AND ERROR—*Harmless Error—Declaration—Amendment —Negligence—Variance.*—The declaration by a passenger in an action for injuries sustained, alleged that the accident was due to want of proper control of the car and timely application of the brakes. Objection was made to the introduction of evidence under these allegations showing that the controller of the car broke. While perhaps it would have been more regular for the court to have required the plaintiff to amend the declaration, yet as no continuance was asked for on the ground of surprise, and the motorman whom it was claimed had made the statement as to the breaking of the controller was present, the error, if any, was harmless.

4. RES GESTAE—*Declaration of Motorman After Accident.*—In an action by a passenger for injuries sustained in a collision between a truck and a street railway car, the declaration of the motorman immediately after the collision that this was the third time the truck driver had tried to cross him, and this time he had gotten him, was held admissible as part of the *res gestae.*

5. Res Gestae—*Time Between Act and Declaration.*—In the instant case none of the witnesses undertook to measure in seconds or minutes how much time elapsed between the collision and the statement of the motorman referred to in the preceding syllabus, but it was perfectly clear that the interval was very brief, and that the conversation not only followed almost immediately upon the collision, but that it stood in immediate causal relation thereto. It followed under the immediate spur of the main fact, and bore no evidence of reflection or deliberation on the part of the actors. It appears to have been a spontaneous, undesigned, and illustrative incident and part of the litigated act. These are the tests of admissibility under the *res gestae* rule, which rule itself is incapable of any precise definition.

6. Res Gestae—*Discretion of Trial Court.*—The application of the *res gestae* rule to a particular case depends upon the circumstances of that case, and necessarily rests at last in every instance upon the discretion and judgment of the trial court. Such discretion and judgment, of course, may be the subject of review; but in doubtful cases there ought to be and is a presumption in favor of the action of the court below.

7. Res Gestae—*Time of Declaration.*—Where a witness was not permitted to testify as to a statement admitted as part of the *res gestae*, because of his inability to fix the time definitely when the statement was made, the appellate court is governed as to the admissibility of the declaration by what the witnesses who did testify thereto said as to the time and circumstances, and the testimony of the witness whose evidence was excluded is without weight in determining the question of admissibility.

8. Damages—*Evidence—Financial Condition of Plaintiff.*—In an action for damages by a passenger against a street railway company where there was no claim of punitive or exemplary damages, evidence as to the financial condition of the plaintiff was inadmissible, even for the purpose of enabling the jury to fix a proper sum for the mental suffering of plaintiff due to the contemplation of the financial distress which would necessarily come upon her by reason of her lack of funds and her physical inability thereafter to make a living.

9. Exceptions and Objections—*Waiver of Objections.*—Where the admission of testimony as to plaintiff's financial condition was made the subject of serious objection which was thoroughly argued before the trial court and deliberately passed upon and overruled, such objection *is* not waived by the fact that counsel for the defendant did not at the moment object to statements upon cross-examination of plaintiff that she had to sup-

port herself and her mother and was worrying about these things, where counsel later reminded the court of his objection and motion to exclude all references to plaintiff's financial condition.

10. EXCEPTIONS AND OBJECTIONS—*Waiver of Objections.*—Objection to the erroneous admission of evidence is not waived by introducing rebutting evidence, although it be of the same kind, or by cross-examination in relation to the objectionable matter. Where an objection to evidence is distinctly made and overruled, it need not be repeated to the same class of evidence to save the objection, although the question is asked of another witness.

11. APPEAL AND ERROR—*Inadmissible Evidence—Instructions to Disregard.*—The rule is well settled that the error in the admission of improper evidence may be cured by a proper instruction to disregard it, but the withdrawal of the illegal evidence from the jury must be in direct and explicit terms.

12. APPEAL AND ERROR—*Inadmissible Evidence—Instructions to Disregard—Case at Bar.*—In the instant case where evidence as to plaintiff's financial condition had been erroneously admitted, the error was not cured by an instruction that plaintiff could only recover damages which would actually compensate her for the injuries actually sustained as the direct result of the accident, especially in view of an instruction for plaintiff that the jury might take into consideration her station in life, and mentioning her mental suffering as a proper element upon which to base a recovery; this element according to plaintiff's theory being necessarily aggravated by her lack of means.

13. APPEAL AND ERROR—*Evidence as to Financial Condition—Prejudicial Error.*—In the instant case it was contended that the verdict was not excessive, and that therefore error in admitting evidence as to the financial condition of plaintiff was harmless.

*Held:* That the admission of evidence of the character complained of must be presumed to have wrongfully affected the verdict, and its admission compelled the defendant to submit to the result of a trial had in violation of a settled rule of evidence which it invoked and had the right to have enforced.

Error to a judgment of the Circuit Court of Alexandria county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Moore, Keith, McCandlish & Hall* and *Jno. S. Barbour,* for the plaintiff in error.

*Henry I. Quinn, Leo P. Harlow* and *J. K. M. Norton,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

An electric railway car, owned and operated by the Washington-Virginia Railway Co., collided with a motor truck owned and operated by the Washington Brick and Terra Cotta Co. at a point where a private road leading from the latter company's brick plant crosses the tracks of the railway company. Miss Anna E. Deahl was a passenger on the electric car and claimed that as result of the collision she sustained physical injuries for which she brought an action against both companies. There was a verdict and judgment in her favor against the railway company for the sum of $5,000, and to that judgment this writ of error was awarded.

[1, 2] 1. The plaintiff as a witness in her own behalf was permitted, over the objection of the railway company, to make the following statement: "After I got home from that accident the claim agent, Mr. Travers, came and he said the controller broke on the car and that was why the motorman could not stop the car."

The chief objection urged against this statement as evidence is that it violates the rule against hearsay. The soundness of this objection depends upon the relationship which the declarant bore to the defendant, and the capacity in which he was acting at the time he made the statement. He was not present when the accident occurred and only knew of the circumstances attending it by information ob-

tained from others. If he was not acting in a representative capacity and within the scope of his agency, then his statement was pure hearsay and not admissible. If, however, the statement related to a matter within the sphere of his authority, and was made in the course of an investigation or negotiation concerning that matter, then regardless of how he derived his knowledge, he spoke as and for his principal, and his statement was admissible.

It appears that Travers was the claim agent of the defendant company and had called on Miss Deahl to see her in regard to the accident itself and the manner in which she was hurt. The evidence does not show just what his duties were, but the general scope and purpose of a railway claim agent's business are matters of common knowledge. There can be no doubt that he called to see Miss Deahl in connection with an investigation of the accident and a determination of the company's attitude and probable liability as to any claim she might make. It is true that he had nothing to do with the operation of the car, and was not in any way a participant in the occurrence, but the investigation and settlement of the plaintiff's claim against the company for personal injuries necessarily involved the acquisition on his part of accurate information and knowledge as to the cause of the action. Such information and knowledge were peculiarly essential to his branch of the company's business, and his declarations made in regard thereto in the course of his negotiations with the plaintiff fall easily and plainly within the rule permitting proof of declarations made by agents within the realm of their agency, and during the transaction of business in which they are employed. *Lynchburg Telephone Co.* v. *Booker,* 103 Va. 594. 604, 50 S. E. 148. and cases cited.

[3] It is further urged that the statement in question ought not to have been admitted because there was no allegation of negligence in the declaration sufficiently broad to em-

brace a defective condition of the controller. The charge of negligence in the declaration is that the company "did not use due and proper care that the plaintiff should be safely and securely carried by the said train on the said journey, but wholly neglected to do so and ran its said train carelessly and negligently across and over the said roadway without having the said train under proper control * * * and without a timely application of the brakes." It may be rather remote to say that proof of the fact that the controller broke tends to prove these allegations as to proper control of the car and timely application of the brakes, but we do not think the objection here relied upon ought to be seriously regarded in this court. The objection was made in the court below, and it would perhaps have been more regular if the court had required the plaintiff to amend the declaration. If this had been done, however, the motorman who had charge of the car and who was alleged to have made the statement was present, and it would have been proper to proceed at once with the trial. No continuance was asked for on the ground of surprise.

[4] 2. The court permitted over the objection of the railway company, the following testimony: (a) By the witness Joshua Hardy that he was at the scene of the accident immediately after the collision and heard the railway company's motorman, just after getting out of his car say to the driver of the truck: "This is the third time you have run across me like this, and I have got you this morning." (b) By Hugh Lion that he was on the running board of the truck when the collision occurred, and heard the above mentioned declaration made just as the motorman stepped from the car; (c) and by the witness, Cornelius Lion, the driver of the truck and the man to whom the motorman was speaking, that the declaration was made under the circumstances described by the following extract from his testimony:

"Q. Did you see the motorman when he got off his car?

"A. Yes, sir. I was standing right there at the time. I got down and was standing there when he jumped out. I was out there first though, and he walked up to me and asked me—

"Q. (Interposing). Did he walk straight from the motor when he got out?

"A. Yes, sir.

"Q. He walked straight from the motor when he got out?

"A. Yes, sir. I was the first one he spoke to.

"Q. What did he say?

"A. He asked me why did I cross and I asked him why did not he blow, and I told him that I did not see him, and he said he did blow and I contradicted him and he said that was the third time I had tried that and that time he got me."

[5, 6] None of the witnesses undertook to measure in seconds or minutes how much time elapsed between the collision and the conversation, but we think it perfectly clear that the interval was very brief, and that the conversation not only followed almost immediately upon the collision, but that it stood in immediate causal relation thereto. It followed under the immediate spur of the main fact, and bears no evidence of reflection or deliberation or calculation on the part of the actors. It appears to have been a spontaneous, undesigned and illustrative incident and part of the litigated act. These are the tests of admissibility under the *res gestae* rule. The rule itself is incapable of any precise definition. Its application to a particular case depends upon the circumstances of that case, and necessarily rests at last in every instance upon the discretion and judgment of the trial court. Such discretion and judgment, of course, may be the subject of review, but in doubtful cases there ought to be and is a presumption in favor of the action of the court below.

It is not always easy to apply the rule correctly, because

not always easy to say whether the statement or declaration in question is merely a recital of a past occurrence or is a verbal act forming a part of the occurrence itself. We have deemed sufficient in the present case to state generally the essential characteristics of the rule as above, and to concur in the holding of the trial court that the evidence under consideration was properly admitted.

A case which perhaps goes as far as any Virginia case has gone in excluding declarations of this character is *Blue Ridge Light Co.* v. *Price,* 108 Va. 652, 62 S. E. 938, wherein this court held that the statements of a motorman made just after the accident to the plaintiff, Miss Price, were not admissible. There was very little discussion of the *res gestae* rule in that case, the opinion being directed mainly to the proposition that the motorman could not bind the defendant company on the score of agency. We have no difficulty in reaching the same conclusion in this case under the agency rule, and so far as the *res gestae* doctrine is involved we are of opinion that the case in judgment is fairly distinguishable in its facts and circumstances from the case cited. Miss Price who seems to have been knocked down by a car which she was attempting to board, had gotten up after the accident and had gone into the car, and at least an appreciable time had elapsed between the accident and the conversation which was excluded. Moreover the statement of the motorman in that case was dissimilar in its character and in its general setting from the excited declarations of the motorman in the case at bar.

Another case cited for the defendant is *Vicksburg & Meridian R. C.* v. *O'Brien,* 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299. The opinion in that case, by Mr. Justice Harlan, shows that the statement of the engineer which was held inadmissible was made from ten to thirty minutes after the accident; and even in that case four members of the court—Chief Justice Waite, and Justices Miller, Field and

Blatchford—were of opinion that the engineer's statement ought to have been admitted as part of the *res gestae.*

The general nature of the *res gestae* rule is so well understood, and has been illustrated by so many adjudicated cases, that we do not feel warranted in prolonging the discussion of this branch of the case. The pertinent authorities are comprehensively collected under the title *"Res Gestae"* in 11 Mich. Dig. 907, 931, and in the later volumes of that work, 14, 15, 16 and 17, under the same title.

[7] We do not overlook the contention made by counsel for the railway company that the testimony of a witness named Downham, who was a fellow passenger with plaintiff, shows that a considerable interval of time elapsed between the collision and the declaration of the motorman to the truck driver. We do not think the testimony of the witness can be given the effect claimed for it in this connection. He is not very definite as to the time, but clearly shows that the conversation he heard was just after the accident had happened. Moreover, this witness was not permitted, because of his inability to fix the time definitely, to testify as to the conversation, and we must be governed as to the admissibility of the declaration by what the witnesses who did testify thereto said as to the time and circumstances.

For the reasons stated, we find no error in the admission of the evidence complained of in the first and second assignments.

[8] 3. Miss Hofman, a trained nurse, testifying on behalf of the plaintiff, was asked the following questions and gave the following answers over the objection of the defendant company:

"Q. Have you any knowledge of Miss Deahl's financial condition?

"A. I certainly have.

"Q. What is it?

"A. During the winter she did not have anything but what she got from me, the room rent, and when I was in I always boarded with them, and that was all she had, except once in a while her brother would give her a little something."

This testimony was clearly illegal, and should have been excluded. There was no claim of punitive or exemplary damages involved in this case, and the general rule supported by the great weight of authority is that compensatory damages are not affected by the financial standing of either party to the action, and that it is error to admit evidence on that subject. Watson on Damages for Personal Injuries, sec. 620; Sutherland on Damages, (3d ed.), sec. 1254; 8 Am. & Eng. Enc. L. (2d ed.), p. 640; 13 Cyc., p. 197; 17 *Corpus Juris*, sec. 181, p. 872, and cases cited note 68; *Penn. & Co.* v. *Roy*, 102 U. S. 451, 26 L. Ed. 141; *C. & O. Ry. Co.* v. *Ghee*, 110 Va. 527, 533, 66 S. E. 826.

In the case of *C. & O. Ry. Co.* v. *Ghee, supra*, evidence was admitted by the trial court on behalf of the plaintiff to the effect that the deceased, for whose death damages were sought, owned ten acres of land at the time of his death and did not have any other property or estate; and the admission of this evidence was one of the errors for which the judgment in that case was reversed. Judge Cardwell, delivering the opinion of the court, said: "We are of opinion that this evidence was irrelative and improper, and should have been excluded, since it was not material to any issue in the case. Such evidence was calculated to excite the sympathy of the jury, or, as stated by some of the courts, to stimulate their sympathy, and this sympathy was well calculated to influence the jury not only as to the *quantum* of damages they should allow, but in the determination of the question whether the case upon the evidence was for the plaintiff or for the defendant. The principle that such evidence is presumed to have wrongfully affected

the verdict seems to be settled by the decisions of this court."

It is contended on behalf of the defendant in error that in this case the foregoing evidence was admissible at least for the purpose of enabling the jury to fix a proper sum for the *mental suffering* of Miss Deahl due to the contemplation of the financial distress which would necessarily come upon her by reason of her lack of funds and her alleged physical inability thereafter to make a living. No such distinction as this is recognized by the law in Virginia or elsewhere so far as we know, but even if there were such distinction, there was nothing at all in this case to limit the jury's consideration of the evidence in question to that particular purpose.

[9] It is further contended that if the evidence was improperly admitted, the error was harmless because subsequently and during the course of her cross-examination by counsel for the brick company, Miss Deahl stated, without objection on the part of the railway company, that she had no support herself, that she had been supporting her mother for twenty years, and that she was worrying about these things. The argument here is that the former error of the court in admitting the evidence as to Miss Deahl's financial condition was waived and rendered harmless by the subsequent admission without objection of other testimony to the same effect. The general rule here invoked is well settled, but in order to be applicable there must be some reasonable and just foundation for holding that there was in fact a waiver. An application of the rule in this case would be a distortion of its purpose and a sacrifice of the principle upon which it rests. The record shows that the testimony as to Miss Deahl's financial condition was made the subject of a serious objection which was thoroughly argued before the trial court and deliberately passed upon and overruled. There was everything to charge the trial judge and the opposing counsel with knowledge of the fact

that the railway company was earnestly relying upon this objection, and had no idea of waiving the same. It is true that counsel for the railway company did not at the moment object to the allusions of the witness to the support of herself and her mother, but during the very cross-examination by counsel for the brick company in which she made these allusions, and after some of them had been made, counsel did again specifically remind the court of his objection and motion to exclude all references to the plaintiff's financial condition. And at a still later stage, when Mrs. Elizabeth Deahl, the plaintiff's mother, was on the stand, the court, while properly ruling out all references which had been made to Mrs. Deahl's dependence upon and support by the plaintiff, reaffirmed its ruling in admitting the evidence as to the poverty of the plaintiff herself.

Under these circumstances, we think it clear that the objection to the evidence in question was not waived.

In the case of *Virginia Ry. & P. Co.* v. *Davidson,* 119 Va. 313, 321, 89 S. E. 229, 230, a similar question of practice arose, and we said: "We do not think the objection was waived. The bill of exceptions which sets forth the testimony of the witness, Walton, on this point, shows that at the very first offer of the plaintiff to prove the motorman's general reputation the defendant specifically and earnestly objected on the ground that such evidence 'was immaterial and irrelevant, and that the defendant was only responsible to the plaintiff for the act of the motorman at the time of the action complained of, and that any general reputation he may have for either carelessness or carefulness was not properly admissible.' The court heard argument of counsel upon the question and then admitted the evidence. In this state of the record we have no hesitancy in holding that the subsequent cross-examination of the other witnesses on this subject, without formally repeating the objection, and the introduction of rebuttal evidence by the

defendant, did not waive the previous objection, and that the motion to exclude was a timely and proper method of further saving the point.

[10] " 'Objection to the erroneous admission of evidence is not waived by introducting rebutting evidence, although it be of the same kind, or by cross-examination in relation to the objectionable matter * * *. Where an objection to evidence is distinctly made and overruled, it need not be repeated to the same class of evidence to save the objection, although the question is asked of another witness.' 38 Cyc. 1398, 1399, and many authorities there cited."

[11, 12] It is further argued that the objection to this testimony was rendered harmless by instruction "J" given at the request of the defendant railway company as follows: "The court instructs the jury that even if they should find for the plaintiff they cannot under the law allow her more damages than they believe from the evidence would actually compensate her for the injuries actually sustained as the direct result of the accident, and the burden is on the plaintiff to prove her damages by a fair preponderance of the evidence with a reasonable certainty, and if they believe that her present condition is due, in part, to nervousness, hysteria, or any trouble with internal organs, which originated prior to August 10, 1916, they must take into consideration the previous existence of such diseases and troubles and not assess any damages therefor."

This instruction was not sufficiently specific as a direction to disregard the illegal evidence which had been admitted, if, indeed, it even remotely had such evidence in view. The rule is well settled that the error in the admission of improper evidence may be cured by a proper instruction to disregard it. *Southern Ry. Co.* v *Simmons,* 105 Va. 651, 661, 55 S. E. 459; *Taylor* v. *Commonwealth,* 122 Va. 886, 894, 94 S. E. 795. But, as appears from the authorities just cited, the withdrawal of the illegal evidence from

the jury must be in direct and explicit terms. It can hardly be said that the instruction above quoted could have led the jury to suppose that the evidence in question was being thereby withdrawn. Especially is this true in view of the fact that plaintiff's instruction No. 4 told the jury that they might take into consideration "her station in life," and twice mentioned her "mental suffering" as proper elements upon which to base a recovery—the latter element, according to plaintiff's theory, being necessarily aggravated by her lack of means.

[13] But it is said that the verdict of $5,000 was not excessive, and that the error under consideration was therefore harmless. It is true that we are not asked to set aside the verdict on the specific ground that the damages allowed were excessive, and it is also true that if the case had gone to the jury without the evidence in question and their verdict had been for the same amount, we would not be able to interfere with it on account of its size; but the fact remains that a motion was made in the lower court for a new trial on the express ground that the verdict was excessive, and very grievous complaint is made in this court of the size of the recovery. The position taken before us is stated thus in the petition upon which this writ of error was awarded: "Your petitioner contends that the damages awarded in this case are out of all proportion to the extent of the injuries sustained, and that in fixing the amount of damages the jury was largely influenced by this line of testimony as to the financial condition of the parties." It is apparent, therefore, that the real question is whether the size of the verdict may not have been materially augmented by improper testimony. The authorities cited above establish the rule that evidence of the character here complained of is presumed to have wrongfully affected the verdict. That it may have done so in this case seems rather more than a probability, and, at any rate, its admission

compelled the defendant to submit to the result of a trial had in violation of a settled rule of evidence which it invoked and had the right to have enforced. The admissibility of the evidence was so earnestly insisted upon both in this court and in the court below that there is little reason to suppose that the able and ingenious counsel for the plaintiff failed to make effective use of it before the jury.

For the error in admitting the testimony with reference to Miss Deahl's financial condition, the case must be reversed and remanded for a new trial, and this fact makes it unnecessary to deal with the remaining assignments of error. They involve questions that are not likely to arise at the next trial, except the motion to set aside the verdict on the ground that the evidence was not sufficient to support it, and as to this it would not be proper, under our practice, for us to express any opinion at this time.

*Reversed.*