GRAHAM AND THE TITLE GUARANTY AND SURETY COMPANY *v.* UNITED STATES OF AMERICA.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 76. Argued November 13, 14, 1913.—Decided December 8, 1913.

Where the contractor refuses to go on with the work there is no question of revision of judgment of an officer annulling the contract, and a right of action accrues to the Government without need of any useless ceremony of approval by the superior officer or board. *United States* v. *McMullen,* 222 U. S. 460, distinguished.

In this case, as the bond in terms contemplated an extension of time and the contract provided for modifications, the surety was not discharged by waiver of time limit or for modifications without its express consent.

Under a contract that the Government would furnish the contractor with granite blocks free on board cars at the quarry, he to transport them, *held* that the contractor was to furnish the cars and was responsible for delay in that respect.

In Federal courts the judge and jury are assumed to be competent to play their respective parts; and *held* that the charge to the jury in this case as to the meaning of the phrase "net dimension blocks" was adequate and fair.

This court will not upset a verdict upon the speculation that the jury did not do their duty and follow the instructions of the court; the fact that the attention of the jury was called by counsel for the Government to the statement on the letter-head of the surety company defendant that its capital was $1,000,000, *held* not to have been prejudicial.

An instruction that the Government was entitled to recover, in case of breach found, an amount, not exceeding the penalty of the bond, equal to the difference between the reasonable and necessary cost to it for transporting, cutting and delivering the granite mentioned in the case and the amount specified in the contract, *held* to have referred simply to the granite actually in controversy; and there

being evidence in the case to warrant the finding, and as the measure followed the contract, a verdict for the amount was correct.
188 Fed. Rep. 651; 110 C. C. A. 465, affirmed.

THE facts, which involve the validity of a judgment obtained by the United States against a contractor and surety for failure to perform, are stated in the opinion.

*Mr. Charles F. Harley* and *Mr. George R. Gaither*, with whom *Mr. John B. A. Wheltle* and *Mr. Burdette B. Webster* were on the brief, for plaintiffs in error.

*The Solicitor General* for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action upon a bond against a contractor and his surety, for breach of a contract made under the act of March 3, 1903, c. 1007, 32 Stat. 1083, 1102, with Green, Superintendent of Construction, acting under the direction of the Regents of the Smithsonian Institution for the United States, party of the first part, which the bond was given to secure. The contractor, Graham, agreed to "transport from the quarry, cut, box and deliver complete, all of the Bethel granite, to be furnished by the party of the first part free on board cars at the quarry at Bethel, Vermont, required for" a part of the National Museum in Washington described in the specifications, "and to do all other things needful to carry out all and singular the several requirements of the said specifications, the drawings therein referred to, and the instructions and general conditions," for a gross sum. In case of failure to prosecute the work diligently in the judgment of the Superintendent of Construction, Green or his successor was given power, 'with the sanction of the Regents of the Smithsonian Institution, to annul' the contract by notice in

writing, whereupon payments under the contract were to cease, &c., and the United States was given the right to recover from Graham any excess over the contract price expended for completing the contract, which it was authorized to proceed to do. There were provisions for an extension of time by the Superintendent, for written modifications of the contract as to the character or quantity of the labor or material, and for payment of ninety per cent. as the progress of the work might warrant. The bond was for the performance of the contract according to its true intent and during any period of extension granted by the United States.

On March 7, 1908, after the time fixed for the completion of the work, Graham discharged his workmen and stopped work, the contract not having been performed. On March 11, the Superintendent wrote to him saying that he had heard that Graham apparently had stopped work indefinitely, and asking for immediate correct information. On the 14th Graham's lawyer answered that Graham had stopped work; that the step was necessary for his financial welfare in view of the damage that he had sustained through the Government's conduct, and that "if this matter can be in any way amicably adjusted" he would be glad to do anything fair. On the 16th the Superintendent replied that if he received no immediate assurance that the work was to be resumed promptly he must proceed to annul the contract; and on the 18th notified Graham that the contract was annulled with the sanction of the Regents of the Smithsonian Institution. To this Graham's lawyer rejoined that they could not concede any default, that the Government alone was to blame, but that they were willing to do what was fair, and to let the Government use their plant if the damage sustained could be adjusted. The Superintendent had written on the 18th to the Secretary of the Board of Regents recommending the so-called annulment and notice

to the contractor and his surety, and had received his approval expressed to be on behalf of the Board of Regents. Afterwards the United States completed the work. There was a long trial which resulted in a verdict and judgment for the plaintiff for the penalty of the bond, $50,000, subject to exceptions. The judgment was affirmed by the Circuit Court of Appeals. 188 Fed. Rep. 651; 110 C. C. A. 465.

Before considering the excuses alleged by Graham we will dispose of a preliminary objection that the suit cannot be maintained because the Secretary of the Board of Regents did not consult the Board before undertaking to sanction the 'annulment' of the contract. It is unnecessary to pass upon the argument that under the statute the Board could have no voice, and that by custom and practice, as well as by necessity in view of the constitution of the Board, the Secretary represented it in matters like this. The provision as to annulment, construed in *United States* v. *McMullen*, 222 U. S. 460, 471 and cases cited, referred to cases where there was a failure to prosecute the work diligently in the judgment of the Secretar and allowed a revision of that judgment in cases of tht sort, before the United States should decline to procee further and complete the work by other means. But when Graham refused to go on, there was no question of judgment to be revised but a plain breach of the contract unless the refusal was justified, and a right of action accrued without the need of a ceremony that would have had no meaning or use. The letters from March 7 to March 18, 1908, appear to us to show a clear refusal by Graham to do any further work. The expressions as to adjustment suggest nothing but a compromise of mutual claims, to be followed by the Government's, not Graham's, use of Graham's plant.

Another objection not going to the merits of Graham's case is that the surety was discharged by a waiver of the

original time limit without its assent, and by Graham's being called on for some extra work, due to a slight enlargement of the diameter of the dome, for which he was paid. The bond in terms contemplated an extension of time as possible and the contract provided, as we have said, for a waiver of the time limit and for written modifications. The modifications were exhibited in letters, but perhaps it is unnecessary to consider how far a surety whose undertaking extends to modifications of the principal contract is concerned with the form in which they are made. The surety was not discharged. *United States* v. *McMullen,* 222 U. S. 460, 468, 469.

The only question of substance is whether Graham's refusal to finish the work was justified or excused by the conduct of the other party. The first and only serious matter of complaint on his part was delay in furnishing him granite. The undisputed testimony is that this delay was due to their being unable to get cars at the quarry to take the stone, and so under the instructions the jury must have found, so that the responsibility for it depends upon who was bound to furnish the cars. By the contract the Government was to furnish the granite free on board the cars at the quarry, and Graham agreed to transport it from that place. On such an undertaking, as Graham was to do the transporting and moreover was made responsible for safe delivery on the site of the Museum building, and as the railroad would be his bailee, he naturally would be held to furnish the cars. No different conclusion seems to us to follow from the language of the preliminary description and conditions. These recite that "The necessary Bethel granite stock, in net dimension blocks, is to be furnished to the Government by the present contractor, free on board cars at the quarry in Bethel, ready for the contractor for the cutting of the granite to transport it to his cutting yards for that purpose." They go on "Bidders for the Bethel granite work

will therefore bid on the basis and understanding that the granite, in net dimension blocks, one block for each separate pattern, will be furnished to them without unnecessary delay and without charge, free on board cars at the quarry at Bethel, Vermont." The first passage does not mean that because the quarry man was to furnish the granite free on board and ready for transportation the quarry man was to furnish the cars. It may mean that as between him and the Government the Government was bound to do it, but, by the same reasoning, the second passage means that bidders were invited to step into the Government's shoes and assume a like obligation towards it, as by the agreement when made Graham did. It follows that he cannot charge the United States with delay due to lack of cars. Furthermore, in a letter of February 10, 1908, when the delay had ceased, he wrote that the work was nearly finished and that he intended to devote his whole yard to it until it should be about completed. This is wholly irreconcilable with the defence that a month later he abandoned the work because of the delay.

The next excuse put forward is that the granite was not furnished in 'net dimension blocks.' There was contradictory evidence as to the meaning of the phrase, Graham contending, in the face of his contract to cut, that it meant perfect blocks. But he admitted that he did not have that understanding when he contracted and, although on February 14, 1907, he complained of the size, in the letter just mentioned of February 10, 1908, he wrote that the work 'has had to be cut and shipped, but it is now nearly finished and I intend to devote my entire yard to Museum work, until I see the job about completed.' The judge left it to the jury 'whether on a fair average the rough stone furnished complied with the stipulation that it should be furnished in net dimension blocks, as you find the meaning and intention of that stipulation was understood by the parties to the contract.'

He added, 'if you find that in the latter part of February and the early part of March the stone in point of its dimensions and roughness did not comply with the contract, . . . Graham could not be held to the further performance of his contract, and your verdict should be for the defendants.' The reference to February and March did not import a limitation of time, but simply a reference to the period as to which the judge understood that there was special complaint. No attention was called to the matter as it should have been if any misunderstanding was feared. The charge on the point was adequate and fair. It is objected that the judge called the jury's attention to Graham's testimony concerning his expectation when he contracted. The judge had a right to do more than that if he left the decision to them. Universal distrust creates universal incompetence. In the courts of the United States the judge and jury are assumed to be competent to play the parts that always have belonged to them in the country in which the modern jury trial had its birth. *Rucker* v. *Wheeler*, 127 U. S. 85.

The ground on which Graham testified that he stopped work was that he could not get any money, but there seems to be no evidence that the Government failed in its obligations as to payment and this point is not one of those most pressed. We have examined the places in the record referred to by the defendants and think it enough to say that we discover no error of which they can complain.

Much emphasis was laid in the argument on what seem to us meticulous objections to every detail in the conduct of the trial. One that was dwelt upon was that, in putting in a letter from the surety showing notice to it of Graham's default and the position taken by it, the counsel was allowed to read the letter head, which contained the words 'Capital and Surplus over $1,000,000,' as well as the letter itself (which last was not objected to), and that in argument the counsel for the Government said 'There is no

room for sympathy for the poor defendant in this case.' The document went in as a whole, properly enough, and the judge charged the jury that it was 'not a case for sentimental considerations of any kind' with more in the same direction. It would be absurd to upset a verdict upon a speculation that the jury did not do their duty and follow the instructions of the court. As to various remarks made by the judge in the course of the trial, it is enough to refer to what we have said already as to his power, and that we discover nothing that could have created a prejudice against the defendants or have been open to objection even if he had been more strictly tied down by law than he was.

We find no error on the question of damages. The judge instructed the jury that the plaintiff was entitled to recover, of course not exceeding the penalty of the bond, the difference between 'the reasonable and necessary cost to the plaintiff for transporting, cutting and delivering the granite mentioned in this case . . . and the amount specified in the contract' to be paid to Graham. There was some cavil at the phrase 'granite mentioned in this case,' but obviously it meant the granite in controversy. There was evidence warranting a finding, and the measure followed the contract and was correct. *United States* v. *McMullen*, 222 U. S. 460, 471. A superfluous number of prayers was submitted and exceptions were taken at every step. We deem it enough to say in regard to them all that the instructions to the jury were fair, the rulings on the questions in the case correct, and that nothing appears that would warrant us in ordering the case to be retried.

*Judgment affirmed.*

THE CHIEF JUSTICE took no part in the decision of this case.