## GRIFFIN *v.* EDWARD EILER LUMBER CO.

[84 South. 225. In Banc. No. 20895.]

1. SALES. *Carrier designated is buyer's agent to accept delivery; loss from carrier's refusal to accept goods falls on buyer.*

   Where a contract of sale provides that the goods sold are to be shipped to the buyer, the carrier by which they are to be transported becomes the agent of the buyer to accept delivery, and the loss occasioned by the refusal of the carrier to accept and transport the goods must be borne by the buyer, and not by the seller.

2. SALES. *Duty on buyer to furnish cars for shipment f. o. b. at seller's place of business.*

   When a seller agrees to deliver the goods sold to the buyer f. o. b. cars at the seller's place of business, the seller is under no obligation to furnish the cars in which to load the goods, in the absence of an agreement to furnish them.

3. SALES. *"F. o. b." means "free on board," and when seller is to ship goods means that they are to be loaded by seller.*

   The abbreviation "f. o. b.," when used in contracts of sale, means "free on board," and, when the goods sold to be shipped by the seller to the buyer, means that the goods sold are to be loaded by the seller on the vehicle or conveyance for shipment without any expense on the part of the buyer.

APPEAL from the circuit court of Jones County.
HON. R. S. HALL, Judge.

Action by the Edward Eiler Lumber Company against J. M. Griffin. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Ellis B. Cooper, J. T. Brown* and *W. J. Pack,* for appellant.

Appellant in its brief concedes impliedly that the first question propounded by the court should be answered in the affirmative. In other words there is an implied ad-

mission that the railroad company was the agent of the appellee to whom delivery could have been made.

The appellee does not comment upon the refusal to receive by the railroad. This is in fact a concession that the record does not disclose that the failure of appellant to deliver the lumber was caused by the railroad's refusal to receive it.

The two questions, those propounded by the court, have been favorably answered by the appellee itself, and there can be no question on this score, and on the questions propounded and the answers of the appellee, the case should be reversed and a judgment rendered here for appellant.

But counsel says that in the last analysis the question is as to whose duty it is to furnish the cars. We do not concede this. The record plainly shows that it was our duty to deliver to the carrier and that appellee had designated the carrier as its agent to receive it and that its agent refused to receive it.

But we will meet appellee's contentions with the authorities themselves. And we do this not waiving our contention that this proposition was on the matter before the court.

The general rule is thus stated in 35 Cyc., page 197: "If the goods are to be delivered to the purchaser at the point of shipment, it is generally his duty to furnish the cars or other means of transportation from such point. Thus, where the contract is to deliver .F. O. B. at the place of shipment, it is *prima facie* the duty of the buyer to furnish the car or vessel in which the goods shall be shipped."

"The only question of substance is whether Graham's refusal to furnish the work was justified or excused by the conduct of the other party. The first and only serious matter of complaint on his part was delay in furnishing him granite. The undisputed testimony is that this delay was due to their being unable to get cars at

the quarry to take the stone, and so, under the instructions, the jury 'must have found, so that the responsibility for it depends upon who was bound to furnish the cars. By the contract the government was to furnish the granite free on board the cars at the quarry, and Graham agreed to transport it from that place. On such an undertaking as Graham was to do the transporting, and moreover was made responsible for safe delivery on the site of the Museum building, and as the railroad would be his bailee, he naturally would be held to furnish the cars.''

It is interesting to note that the supreme court of the United States had before it the case cited by appellee, *Hurst* v. *Altamount 'Manufacturing Company*, 6 L. R. A. (N. S.) 928. See also, as supporting this proposition the following cases: *Consolidated Coal Company* v. *Schneider*, 163 Ill. 393, 45 N. E. 126; *Wiggins* v. *Lumber Company*, 87 S. E. 94; *Graham* v. *United States*, 188 Fed. 651.; *Keenkle* v. *Mitchell*, — Miss. —; *Haskings* v. *Hamilton*, 158 Pa. 107. The authorities cited by counsel are based upon the case of *Hurst* v. *Altamount Mfg. Co.*, 6 L. R. A. (N. S.) 928. In fact this case has given rise to the conflict of views. As has been pointed out the supreme court of the United States has refused to follow it. We think that by its very terms the instant case would not be ruled by it.

In that case there had been no selection of the carrier by the buyer. The backbone of this decision that the seller has the right to select the carrier; that he has the facilities at hand; and that it is more convenient. The court in the Hurst case in speaking of the meaning of ''f. o. b.'' says: ''The decisions are practically' unanimous in holding that these words bind the seller to place the goods on board the cars free of expense to the buyer; also that the carrier is the bailee of the consignee, and that delivery to the carrier amounts to delivery to the buyer. We are asked to extend this meaning a step

further. It is apparent that the goods cannot be loaded until cars are in place to receive them. The duty to select the carrier and cause it to furnish the cars rests somewhere. The plaintiff in error insists that the duty belongs to the seller."

The appellee in the instant case selected the carrier. Had it not been that this selection was made by appellee, the appellant could have performed the contract. The record shows that if the shipping instructions had not been given we could have delivered the lumber, and even afterwards, if appellee had consented to appellant's request for a change, the lumber would have been delivered. So, even accepting the doctrine of this case, appellee having selected the carrier, it should have furnished the cars.

So we submit that the railroad was the agent of the buyer; that the failure to comply with the contracts was due to the railroad's refusal to receive. We submit that it was the duty of appellee to furnish the cars and this is true even if the doctrine contended for by appellee is correct. We submit further that appellee had the power to modify the shipping instructions and having refused contributed directly to his damage.

*Geo. Butler* and *C. S. Street,* for appellee.

As we construe the court's inquiry in its last analysis, it involves the question as to which party is to furnish cars under a contract to ship goods f. o. b. cars at loading point; that is whether the duty devolves upon the seller or the purchaser to furnish cars where there was a contract for delivery f. o. b. cars, and the contract is silent as to which one shall furnish the cars.

The question involves the meaning of f. o. b. cars or free on board cars, and also what the seller undertakes to do under that kind of contract, rather than as to whose agent the carrier becomes after the goods are delivered to the carrier.

We recall no decision upon this exact point in Mississippi. The courts are generally agreed that delivery to the carrier, is a delivery to the consignee, but it does not follow as a consequence that under f. o. b. contracts, the seller is not obligated to procure cars in which to load the shipments.

In 23 R. C. L., page 1337, it is said: ''The abbreviation 'f. o. b.' is frequently used in contracts of sale; some courts hold that evidence is admissible to show that the words 'f. o. b.' mean free on board; but generally speaking, it is held that the courts will take judicial notice that such is the meaning, and it has been held that the abbreviation has acquired such a plain meaning as to preclude the admission of evidence of a local usage or contemporaneous oral understanding of the parties to explain its meaning. This abbreviation is considered as referring to and qualifying the delivery, and it is generally considered to mean that the subject of the sale is to be loaded by the seller on the vehicle of conveyance for shipment without any expense on the part of the buyer. Where the provision is for delivery f. o. b. the point of shipment, the duty to pay the transportation charges is upon the buyer, but it is otherwise where the provision is f. o. b. point of destination.''

And in discussing whose duty it is, under such circumstances, to furnish cars, the authority says: ''The better view, as laid down in the more recent cases is that the duty of furnishing or securing the cars is on the seller. This is in accordance with the general rule that one who undertakes to accomplish a certain result, by necessary implication agrees to supply all the means necessary to such result.'' Page 1337. A number of cases are cited as supporting the text. Two of the leading cases cited are *Hurst* v. *Altamont Manufacturing Company* (Kansas), 6 L. R. A. (N. S.) 928, and *Culp* v. *Sandoval* (N. M.), L. R. A. 1917A, 1157.

In the Hurst case it is said: "It is our understanding that the phrase or formula f. o. b. cars has by long usage and custom acquired throughout the business circles of this country a definite and specific meaning generally understood by all business people. When such phrase or formula is used in a business contract between a buyer and seller of ordinary commercial commodities, where the use of common carriers is necessary, the parties intend thereby that the seller will, at his own expense, do all that may be necessary to accomplish the loading and consignment of the goods to the buyer, including the placing of cars upon which to load the commodities sold; and when nothing appears to modify or limit this meaning courts should enforce the contract so as to effectuate this intent."

And in the Culp case it is said: "In view of the unknown methods of conducting business and the further fact that daily transactions take place between buyer and seller for the purchase and sale of goods to be shipped to the seller, where the purchase is made f. o. b. cars at the point of shipment, which may be many thousand miles removed from the point of destination, it would be unreasonable to say that the seller can excuse his default in the shipment of the goods according to the terms of his contract because the buyer has failed to specify or furnish the means of transportation.

In the case of *Vogt v. Schienbec, supra,* the supreme court of Wisconsin said: "The proposition seems contrary to universal understanding, which ought to be deemed a matter of judicial cognizance without the aid of evidence or adjudged cases. We apprehend that when one buys merchandise of another to be shipped to him by rail from a distant point, the delivery to be made to him f. o. b. cars at the point of starting, such other, as a matter of course, is expected to obtain from the railway company the necessary cars upon which to load the subject of the deal. This we believe to be the more

reasonable and rational rule; hence should be applied in this case, unless some peculiar reason exists by virtue of the contract which makes it nonapplicable.''

We concede that some of the early English cases and some cases in the United States following the early English cases are to the contrary, but in the Culp case the court very clearly and forcibly points out why the early English rule should not be followed in this country, and we do nothing more than direct the court's attention to this opinion.

However, the parties themselves have construed this contract and both have construed the obligation to be upon the appellant to furnish the cars in which to make shipment, and the court will adopt the construction which the parties themselves have placed upon the contract.

In 23 R. C. L. 1338, it is said: ''There are frequently circumstances in the case which tend either to sustain or to rebut the *prima-facie* effect with reference to the duty of furnishing the cars imputed to the phrase f. o. b. and it has been held that where by a uniform course of dealing between the parties they have interpreted the contract as to which one shall furnish the cars, the court will follow such construction, but it has been held that where the contract is in writing, it cannot be shown by oral evidence that the parties agreed that the buyer should see that the cars were secured.''

This text is supported by the monographic notes to the *Hurst* and *Culp cases, supra.* The court will bear in mind that appellant did not plead that his failure to load the lumber was due to the failure of appellee to provide cars. From the very inception, appellant construed this contract to be that he was to obtain the equipment. In his letter of January 29th, he stated that he had the material on hand and wanted to move the same, ''as fast as I can obtain cars in which to load.'' In his letter of February 26th, he entered the order ''for the earliest shipment

that embargoes, and car shortage will permit.'' In his letter of March 29th, he clearly recognizes that it was incumbent upon him to secure cars. In his letter of April 7th, he says: ''I have faithfully and earnestly made every effort to secure cars for this loading.''

Under date of April 10th, appellee called his attention to the fact that it did not guarantee to furnish equipment, and that it was appellant's duty to procure the equipment from the railroad company, and in reply under date of April 12th, appellant again clearly recognized his duty under the contract to procure cars, and the same under letter of May 2nd, so that if there was any doubt from the face of the orders themselves, as to who was to furnish the equipment, that doubt is fully cleared up by the construction which the parties themselves placed upon the contract, as to whose duty it was to provide equipment, and even the authorities which hold that *prima facie* in f. o. b. shipments, it is incumbent upon the buyer to furnish equipment, recognizes that this *prima-facie* presumption may be overcome by the construction which the parties themselves have placed upon the contract.

We think the authorities cited fully cover the points suggested by the court, and we respectfully submit that the case should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment awarding the appellee damages because of the alleged failure of the appellant to deliver to the appellee lumber which it had purchased from him. The facts material to an understanding of the point on which our decision will turn are: That the appellee purchased at different times several carloads of lumber from the appellant to be shipped to it by rail at different points in the states of Ohio and Pennsylvania. The sales were f. o. b. the appellant's

mill which is located in Jones county on the Gulf, Mobile & Northern Railroad. The appellant being ready, willing and anxious to deliver the lumber, called repeatedly upon the railroad company for, and was each time refused, cars in which to load the lumber. He notified the appellee that he could not obtain the cars; but it did, and probably could have done, nothing to aid him to obtain them, and insisted that he ship the lumber as soon as he could obtain the cars. Several weeks after the appellant was due to ship the lumber, he returned the appellee's orders for the lumber to it and sold the lumber to other parties. Afterwards this suit was instituted by the appellant the damages it claims to have sustained because of its failure to receive the lumber.

At the close of the evidence, the jury were instructed to find for the appellee, and there was a verdict accordingly. This instruction should not have been given.

The appellee by directing the appellant to ship the lumber to him by rail, and the Gulf, Mobile & Northern Railroad Company being of necessity the initial carrier, thereby appointed that railroad company as its agent to receive the lumber for transportation to it. *Planters' Oil Mill & Mfg. Co.* v. *Falls,* 29 So. 786; 23 R. C. L. 1423. And when the railroad company declined to furnish the cars for the transportation of the lumber, after being requested to do so by the appellant, it thereby declined to receive the lumber, so that the appellant's failure to deliver it was caused by no fault of his, but of the appellee's agent; consequently the appellee and not the appellant, must bear the loss occasioned thereby.

The appellee's contention is that because the appellant agreed to deliver the lumber f. o. b. his (the appellant's) mill, that he thereby assumed the obligation of furnishing the cars in which to transport it. The abbreviation "f. o. b.," when used in contracts of sale stands for the words "free on board," and when the goods sold are to be ship-

18—122 Miss.

ped to the buyer "mean that the subject of the sale is to be loaded by the seller on the vehicle or conveyance for shipment without any expense on the part of the buyer" (23 R. C. L., 1337), and does not of itself alone indicate whether the seller or buyer is to furnish the vehicle in which the subject of the sale is to be transported.

The vehicle in which property is to be transported by rail must be, *ex necessitate,* a railroad freight car, and it is not only the custom of railroads to furnish the cars in which it transports property, but it is under the duty to do so; consequently the cars in which the seller is to load the subject of a sale for shipment to the buyer by rail, in the absence of an agreement to the contrary, must be presumed to be cars to be furnished by the railroad company. So that the seller complies with his obligation to the buyer, in so far as this feature of his contract is concerned, when he calls on the railroad company for the cars. The railroad company, under such a contract as hereinbefore set forth, acts as the agent or bailee of the buyer, and not of the seller.

The authorities are in conflict as to whether it is the duty of the seller or of the buyer to furnish the cars in which the subject of the sale, under a contract of this character, is to be transported; the cases holding that the duty is on the seller being of comparatively recent origin. 23 R. C. L. 1337; 35 Cyc. 197. Among the cases holding that this duty is on the buyer is *Graham* v. *United States,* 231 U. S. 474, 34 Sup. Ct. 148, 58 L. Ed. 319.

*Reversed and remanded.*