## MARYLAND CASUALTY CO., Inc., v. KELLY.
### No. 2952.

Circuit Court of Appeals, Fourth Circuit.
Nov. 17, 1930.

S. L. Sinnott, of Richmond, Va. (Sinnott & May, of Richmond, Va., on the brief), for appellant.

Stuart B. Campbell, of Wytheville, Va. (Arthur G. Miller, of Pulaski, Va., on the brief), for appellee.

Before NORTHCOTT, Circuit Judge, and McCLINTIC and HAYES, District Judges.

HAYES, District Judge.

This is an action by J. M. Kelly, receiver of the Bank of Ivanhoe, appellee, against Maryland Casualty Company, appellant, to recover $6,000 on a policy of burglary insurance indemnifying the bank for loss or damage sustained by robbery or burglary. Judgment was rendered for the plaintiff, from which the defendant casualty company appeals assigning two errors, namely,

(1) Improperly restricting the purpose of testimony relating to the use of drugs by Mrs. Huddle, the cashier, and principal witness as to the robbery; (2) improper argument of counsel.

Mrs. Huddle testified she was alone in the bank on February 5, 1927, about 11:40 a. m., when a masked man came into the bank and, pointing a pistol at her, demanded the money in the bank. She handed him $600 or $700, the cash in the drawer, and became unconscious; when she regained consciousness two hours later, she was locked in the vault and $5,600 in money was missing from the vault. About seven days later she went to the hospital, claiming to be suffering from a blow on the head which she thought had been inflicted on her at the robbery either by a blow from the robber or from a fall. Her physician, Dr. Chitwood, testified that she had been suffering, and to relieve her pains he had, from time to time, during eighteen months, personally administered to her from three to five grains of morphine per week. Dr. Chitwood opened the vault to let her out of the bank. Dr. Smith saw her seven days later when she was admitted to the hospital. He testified she was under the influence of morphine and not suffering from a blow to the head. There was other evidence that she had taken four grains of morphine and five ounces of chloroform the night before.

There was no evidence that she was under the influence of morphine at the time of the alleged robbery nor when testifying. The trial court restricted the evidence of her use of drugs to the purpose of contradiction. The evidence tended to show that she was in a hysterical condition when taken from the vault, and had hysterics and convulsions at intervals from then until taken to the hospital—they could have been feigned or involuntary. As she had testified that her condition was due to her injuries and the evidence tended to contradict her, it was competent for that purpose. But it is insisted that it should have been received for all purposes, principally for the purpose of showing she was a dope addict, and that dope addicts are incredible. Without entering upon a discussion of the tendency, if any, of the excessive use of morphine to undermine the moral attributes of the user, it suffices to say there is no sufficient evidence in the record to show that Mrs. Huddle had made such excessive use of it, and the court committed no error in restricting the evidence.

This was the third trial of the case. The counsel for defendant, in his argument to the jury, said the defendant had probably already spent more than the amount of the insurance in defending the action. Another member of defense counsel spoke of the bank as a "bursted" bank. The action was prosecuted by a receiver for the insolvent bank. In the closing argument for the plaintiff, his counsel said that he was representing a busted bank, that all the money that might be obtained from the defendant insurance company would be paid out to the depositors and that the stockholders would not get anything. He then said that the Maryland Casualty Company has millions of dollars behind it with which to defend this suit. Objection was made to the argument as improper and tended to prejudice the defendant. Then the court addressed the jury:

"Gentlemen of the Jury, you should utterly disregard the facts you have heard stated as to the amount of money that the defendant has spent in investigating and defending this cause, and you will also disregard the statement you have just heard as to the millions of dollars possessed by the defendant. Nothing was further from Mr. Campbell's thought than that you might be led by what he said to give an improper verdict or a verdict without proper foundation, but it behooves me to remind you that you are sworn officers of the law under the highest duty of deciding this case, without reference to the wealth or the poverty of either side, that you know as well as I know it, could not possibly

790

have any legitimate effect on your reasoning or on your verdict, no matter how poor or how wealthy any party litigant may be."

The trial judge on motion to set aside the verdict says:

"The jury was composed entirely of citizens of Abingdon, appeared to consist only of business men, and the unusually high character of the jury was a matter of frequent comment during the trial. It is I believe a practical certainty that the jurors all knew from the commencement of the trial that the defendant is one of the nationally-known insurance companies, with a capital and surplus in the millions. It seems to me highly improbable that the jury would have been at all influenced by Mr. Campbell's statement, even if there had been no instruction from the court. But at the least I have no reason to assume that the jury disregarded my instruction and admonition."

Certainly the learned and cautious trial judge was in a better position than the appellate court to determine whether there was any apparent prejudice engendered against the defendant. The remarks were improper. The mere fact that the defendant had insured the bank against robbery conveyed to the jurors knowledge that it was in the insurance business, and any man of ordinary intelligence knows that practically all insurance companies have millions of dollars of assets. The insolvency of the bank had been proven during the trial. The remarks were provoked, in part, by the argument of defendant's counsel. Regardless of these considerations, the prompt remarks of the trial judge, sustaining the objection, and cautioning the jury to disregard the remarks, removed any improper effect the argument might have produced.

While there are many decisions of the Supreme Court of the United States and all the federal courts which might be cited in approval, Graham v. United States, 231 U. S. 474, 480, 481, 34 S. Ct. 148, 152, 58 L. Ed. 319, is sufficient. There counsel exhibited a letterhead containing the statement, "Capital and Surplus over $1,000,000," and said, "There is no room for sympathy for the poor defendant in this case." Mr. Justice Holmes, writing the opinion, states: "It would be absurd to upset a verdict upon a speculation that the jury did not do their duty and follow the instructions of the court."

There is no error, and the judgment is affirmed.

Affirmed.