## UNITED STATES v. PARCEL OF LAND IN NORFOLK COUNTY, VA., et al.

### Misc. No. 6774; Parcel No. 114.

District Court, E. D. Virginia.

April 24, 1944.

H. H. Holt, Jr., Sp. Asst. to Atty. Gen., and Robert G. Butcher, Sp. Asst. to U. S. Atty., of Richmond, Va., for the United States.

W. R. Ashburn, of Norfolk, Va., for claimants.

WYCHE, District Judge (sitting by designation).

In this condemnation proceeding the jury award was $17,750, which was within the limits of the evidence directed to fair market value at the time of the taking, but counsel for the United States has moved to set aside the award, not because it is claimed to be excessive, but on the contention that the figure fixed by the jury

might not have been so large if the Court had not permitted evidence that at the time of the taking the property was subject to a deed of trust securing a debt of $15,000 which had been placed on it in 1921, and which continued thereafter as a lien upon the property. It is urged that the Court's ruling which permitted the introduction of the note and deed of trust for the sole purpose of showing the interest of George Pilcher, Trustee, and A. M. Agelasto, holder of the debt, in the issues in litigation, was prejudicial error now requiring a new trial on the question of just compensation for the property taken.

When this cause came on for trial the parties on the record were United States of America as condemnor, and P. A. Agelasto, Jr., Receiver for Wiseacre Realty Corporation, George Pilcher, Trustee, and A. M. Agelasto, as claimants. It appeared from the pleadings that Declaration of Taking had been filed against Wiseacre Realty Corporation and that, after maturity of the usual notice, P. A. Agelasto, Jr., as Receiver of Wiseacre Realty Corporation duly appointed by one of the Virginia State Courts, George Pilcher as Trustee in the deed of trust upon the property which secured a debt in the principal amount of $15,000, and A. M. Agelasto as holder of the debt, had petitioned the Court to be admitted as parties to the cause, and to be recognized as the parties entitled to just compensation for the property taken, and that by order previously entered they had been admitted without opposition from the condemnor, as the real parties in interest. It appears that through their counsel they were conducting the defense of the issue of fair market value.

During the trial and while the witness R. B. Spindle, who had been Secretary of Wiseacre Realty Corporation prior to the receivership of that Company, was on the witness stand, the deed of trust and note were offered in evidence under circumstances shown by the stenographer's transcript to be as follows:

By Mr. Ashburn (counsel for the claimants): "Your Honor, I wish to introduce this deed of trust note and establish its authenticity by Judge Spindle, and I think Mr. Butcher wishes to interpose some objection to it."

Mr. Butcher (counsel for the United States): "The same objection I made this morning your Honor, that the deed of trust evidently was put on this property in 1921, and this is the note, of course, evidencing the mortgage. You would not let the amount come in this morning, so I make the same objection."

The Court: "* * * Let him identify it."

By Mr. Ashburn: "Q. Judge Spindle, will you please look at this document I hand you and state whether or not that is the note secured upon the property in question? A. Yes, sir, that is the note."

Mr. Butcher: "I object to its being introduced."

The Court: "He is identifying it."

By Mr. Ashburn: "Your signature is one of the signatures on that note?" "A. Yes, that is mine; and S. W. Pannill, President."

Mr. Ashburn: "If your Honor please we wish to offer the note in evidence and to have it appropriately marked."

The Court: "For what purpose?"

Mr. Ashburn: "For a dual purpose. In the first place, we conceive that we must establish the relationship of the trustee to the cause in question. In his petition he cites the existence of the trust and the existence of the debt, and this is the formal evidence of the debt and tends to establish his right to be a party to this cause and to participate in it, and his right to recover up to the amount of the debt as the recovery may be awarded by the jury."

The Court: "That is the first purpose. What is the next purpose?"

Mr. Ashburn: "Secondly, we propose to inquire of the witness, if we are permitted to do so, as to the circumstances surrounding the creation of the debt and the valuation of the property when the debt was created."

The Court: "I will admit it for the first purpose, but sustain the objection as to the second purpose. I will note an exception for the Government."

Mr. Butcher: "If your Honor please, there is no denial that the trustee has an interest here. I do not see why they have to establish it by this method."

The Court: "I think it should be admitted for that purpose. I will note an exception for you."

Mr. Butcher: "Yes, sir. Please do."

By Mr. Ashburn: "The amount was what, Judge Spindle? A. $15,000.00, secured by deed of trust to George Pilcher, Trustee."

The Court: "Gentlemen of the jury, that is not admitted for the purpose of proving the value of the land, but for the sole purpose of proving the interest that this party has in the proceeds to be paid as compensation for the taking of this land." (The note was received in evidence and marked Defendant's Exhibit No. 1.)

Mr. Ashburn: "Mr. Butcher, I also wish to introduce in evidence a certified copy of the deed of trust."

Mr. Butcher: "I make the same objection, and I assume his Honor will make the same ruling."

The Court: "Yes, sir, and allow you the same exception." (The deed of trust was received in evidence and marked Defendant's Exhibit No. 2.)

At a later time, in the examination of George Pilcher, Trustee, as a witness, this colloquy occurred:

Mr. Butcher: "If your Honor please, Mr. Pilcher has been sitting here during the trial of the case and he has named the consideration in this mortgage. I would like for the court to tell the jury again why it is admissible—that it is admissible only to show the interest of the trustee."

The Court: "Gentlemen of the jury, I have admitted the mortgage in this case and the entire paper, which shows the amount of the note which the mortgage was given to secure, and I stated at the time, that I admitted it for the sole purpose of showing what interest, if any, the mortgagee had in the land, and not for the purpose of establishing its market value. You will not consider the amount of the note as evidence of the market value, but only as evidence of the interest which the holder of the mortgage has in the property under the condemnation proceedings."

At the conclusion of the evidence and after the argument of counsel for the respective parties, the Court as a part of its charge to the jury reiterated its previous instructions on the subject in the following language: "Ordinarily, the price at which the land was bought, if sufficiently recent to throw light on its present value, would be competent. In this case the testimony shows that the land was bought in 1921, and it is my opinion that that is too remote and, for that reason, I sustained the objection of the Government and would not permit the price at which the land was bought to be offered in evidence, and you will not take that into consideration. And,

in that connection, you will not take into consideration, as I have already charged you, in fixing the market value of the land, the amount of the mortgage that was put upon the land, because that was not admitted for that purpose, but was admitted for the sole purpose of showing who were the owners of the land and who were entitled to receive the compensation which you are to award in the case."

Such is the situation presented by the record. In that situation the position of counsel for the United States is (1) that the admission of the deed of trust note and the deed of trust in evidence for the sole purpose of establishing the relation of the trustee and noteholder to the litigation constituted an erroneous ruling, and (2) that such ruling was prejudicial because the jury may have disregarded the directions and instructions of the Court and have taken the existence of the deed of trust into consideration in determining fair market value.

In considering whether or not the admission of the deed of trust and note in evidence for the sole purpose of establishing the connection between the parties on the record and the litigation was erroneous, it is appropriate to say that the Declaration of Taking Act, 40 U.S.C.A. § 258a, provides in substance that upon the filing of a Declaration of Taking by the United States and the deposit in court to the use of the persons entitled thereto of the amount of estimated compensation, title to the land shall vest in the United States, and the right to just compensation for the land shall vest in the persons entitled thereto; that just compensation shall be ascertained and awarded in the proceeding, and upon the application of the *parties in interest,* the Court may order that the money deposited, or any part thereof, be paid forthwith, and it is further provided that if the compensation finally awarded shall exceed the amount of the money so received *by the persons entitled thereto,* the Court shall enter judgment against the United States for the amount of the deficiency. By that statute the Court is empowered to make such orders in respect to encumbrances, liens, etc., as shall be just and equitable. It has been held that all persons having any interest in property taken are necessary parties to a condemnation proceeding, and that mortgage holders are entitled to be heard upon the question of the value of the property taken, as well

as upon the question of the extent of their claim upon the proceeds awarded for it. Silberman v. United States, 1 Cir., 1942, 131 F.2d 715. Accordingly, it would seem to follow that, under the Virginia practice of encumbering real property by deed of trust rather than by mortgage, the trustee as the representative of the holder of the debt, and the holder himself, are entitled to be parties to the cause on the record, and they should, at some stage of the proceedings, establish their connection with the litigation by evidence; nor is this denied by counsel for the Government, but it is contended that such connection must be shown by evidence at another stage of the litigation and not during the progress of the trial before the jury. That is to say, the Government contends that after the amount of just compensation has been determined, either the Court or a master appointed by it, must hear the testimony on the rights of the parties to the amount awarded, in some second or further judicial proceeding. In support of that contention Section 4374 of the Virginia Code of 1942, relating to eminent domain proceedings under the State practice, is cited. In that statute it is provided that all encumbrances by deed of trust upon property taken are transferred to the money (initially) paid into Court, and that the Court shall make such distribution of such money as to it may seem right, having due regard to the interest of all persons therein, and that in any such case *in which it is not clearly shown by the record* (emphasis added) to whom and in what proportions such money is properly payable, the Court shall direct inquiries, etc. This statute does not attempt to fix or control the stage of the proceedings at which the holders of deeds of trust must establish their connection with the litigation by evidence, but apparently leaves such determination to the discretion of the Court. No apposite cases are cited by Government counsel, for all of those cited relate to the question whether the amount of a mortgage may be proven on the issue of value and as evidence of value.

■ Without attempting to decide the question whether a trustee or noteholder must on all occasions show his connection with the litigation by testimony before the Court or its special master in supplemental proceedings out of the presence of the jury which is determining fair market value, in cases where Virginia property is taken by the United States in eminent domain proceedings, I am of the opinion that the ad-

mission of this testimony was not prejudicial error in this cause. While the stenographer's notes of the testimony on the issue of fair market value at the time of the taking have not been transcribed, it is my recollection that of the two witnesses who were introduced for the Government as experts on value, and who testified that the property had a fair market value of $9,200 and $10,090 respectively, each stated that his figure was reached by an underestimation of the quantity of land taken to the extent of several acres, and should be increased by approximately $500 if the acreage was as large as the claimants asserted and the Government admitted at the time of trial. It is also my recollection that each of these witnesses premised his conclusion at this value level by the statement that the tract of land was generally somewhat lower than several neighboring tracts mentioned for comparison purposes, and that this alleged difference in elevation was denied by the claimants, and that the jurors at their own request were permitted to view the property, presumably, among other purposes, to form their opinion as to whether the tract was in fact of generally lesser elevation than these neighboring tracts. On the other hand the two witnesses who were offered for the claimants as experts on values, and who had made their appraisals in collaboration, fixed the value at $18,797.50, and each of them testified in detail as to the factors which motivated his conclusion. Each of the two witnesses impressed me (and presumably the jury) with his knowledge of the property in question, as well as with the extent of his investigation of the factors which he was entitled to take into account in forming an opinion of value, including his knowledge of sales of similar and comparable properties near the time of the taking. It is, therefore, my opinion that the award of $17,750 is well within the limits of affirmative, credible testimony of value and that it is amply supported by the evidence. Out of an abundance of precaution the jury was three times told that its conclusion must be reached from testimony admitted on the issue of fair market value, and that the existence of the deed of trust or the amount thereof was not admitted in evidence as bearing on that question, had no relation to it, and should be disregarded in forming a conclusion on just compensation.

■ If it was error to admit the deed of trust and note in evidence, it does not fol-

low that this error had any bearing on the amount of the award. I am asked to assume that in spite of my directions and instructions the jurors permitted themselves to be influenced by this testimony. To indulge in that assumption is to conclude that the jurors were insensible to the obligation of their oaths. The general rule is, even where the Court has erroneously told the jury that evidence is admissible for consideration on an issue which the jury is to decide, that when such evidence is finally determined to be improper for consideration by the jury, the error committed in first receiving it is rendered harmless by the subsequent direction of the Court that such evidence should be disregarded, unless from the circumstances of the particular case there be reason to apprehend that such improper evidence has prejudiced the minds of the jurors. The cases from Virginia as well as those from the Fourth Circuit, and from the United States Supreme Court, are in accord with this general rule.

In discussing an instruction to a jury to disregard evidence improperly admitted in Southern R. Co. v. Simmons, 105 Va. 651, 661, 55 S.E. 459, 462, the Supreme Court of Appeals of Virginia quoted from the opinion of Mr. Justice Harlan in Pennsylvania Co. v. Roy, 102 U.S. 451, 26 L.Ed. 141, in this language: "Where that is done, it is not to be presumed that the jury were 'too ignorant to comprehend or were too unmindful of their duty to respect instructions as to matters peculiarly within the province of the court to determine.'"

To the same effect is Taylor v. Commonwealth, 122 Va. 886, 94 S.E. 795, 798, a criminal case in which a damaging ante mortem statement had been improperly admitted in evidence and the jury subsequently told to disregard it. There the Court said: "A careful review of the evidence which was properly before the jury satisfies us that there is no reason to apprehend that they failed to obey the instructions of the court. It is not necessary to believe that the jury did in this case, or could in any case, entirely efface from their minds the fact that improper evidence had been introduced, but the authorities, almost without dissent, recognize the ability of the jurors, as a practical matter, to find fair and impartial verdicts in cases where they have been permitted to hear improper evidence, which has been afterwards excluded from their consideration."

The similar rule prevailing in this Circuit is laid down in Maryland Casualty Co. v. Kelly, 4 Cir., 1930, 45 F.2d 788, 790, where the Court said: "While there are many decisions of the Supreme Court of the United States and all the federal courts which might be cited in approval, Graham v. United States, 231 U.S. 474, 480, 481, 34 S.Ct. 148, 152, 58 L.Ed. 319, is sufficient. There counsel exhibited a letterhead containing the statement, 'Capital and Surplus over $1,000,000,' and said, 'There is no room for sympathy for the poor defendant in this case.' Mr. Justice Holmes, writing the opinion, states: *'It would be absurd to upset a verdict upon a speculation that the jury did not do their duty and follow the instructions of the court.'*"

Pennsylvania Co. v. Roy, 12 Otto 451, 102 U.S. 451, 458, 26 L.Ed. 141, is illustrative of the position of the Supreme Court on this question, and has been consistently followed. In this case the plaintiff was allowed, against the objection of the defendant, to make proof as to his financial condition and to show that, after being injured, his sources of income were very limited. After this testimony was admitted the same was stricken out by the trial court and the jury was instructed to disregard the same. The Court said: "Notwithstanding this emphatic direction that the jury should exclude from consideration any evidence in relation to the pecuniary condition of the plaintiff, the contention of the defendant is, that the original error was not thereby cured, and that we should assume that the jury, disregarding the court's peremptory instructions, made the poverty of the plaintiff an element in the assessment of damages; and this, although the record discloses nothing justifying the conclusion that the jury disobeyed the directions of the court. To this position we cannot assent, although we are referred to some adjudged cases which seem to announce the broad proposition that an error in the admission of evidence cannot afterwards be corrected by instructions to the jury, so as to cancel the exception taken to its admission. But such a rule would be exceedingly inconvenient in practice, and would often seriously obstruct the course of business in the courts. It cannot be sustained upon principle, or by sound reason, and is against the great weight of authority. The charge from the court that the jury should not consider evidence which

had been improperly admitted, was equivalent to striking it out of the case. The exception to its admission fell when the error was subsequently corrected by instructions too clear and positive to be misunderstood by the jury. The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence. Any other rule would make it necessary in every trial, where an error in the admission of proof is committed, of which error the court becomes aware before the final submission of the case to the jury, to suspend the trial, discharge the jury, and commence anew. A rule of practice leading to such results cannot meet with approval." See, also, Turner v. American Security & Trust Co., 213 U.S. 257, 29 S.Ct. 420, 53 L.Ed. 788.

From the circumstances in this case there is no reason to apprehend that if the deed of trust and note were improperly admitted in evidence they in any way prejudiced the minds of the jury. With this in mind it would seem that 28 U.S.C.A. § 391, reading in part as follows, is pertinent: " * * * On the hearing of any appeal, certiorari, writ of eror, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

In token of its general acceptance the rule of decision already laid down by this statute has been carried into Rule 61 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which reads as follows: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

In their brief Government counsel cite three cases in support of their assertion that any error in ruling on the admissibility of testimony is assumed to be prejudicial, but these cases are readily distinguishable from the case at bar. In McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205, the error was not in the admission of improper testimony, but in the exclusion of competent and admissible testimony directed toward one of the factors going to make up just compensation for the property taken. No testimony was admitted on the same subject and by reason of the exclusion the jury was deprived of the opportunity to consider this factor in arriving at the award. There the record disclosed the strong probability that the claimants had been prejudiced by the exclusion, and the question here presented was not involved. In Farris v. Interstate Circuit, 5 Cir., 1941, 116 F.2d 409, a suit for damages for injuries sustained by a theatre patron which were alleged to be attributable to faulty construction and insufficient lighting in the theatre, three witnesses not qualified as experts were permitted to give expert testimony that the construction and the lighting were equal to the standard generally prevailing in similar theatres. Their testimony stated the issue which the jury was called on to determine, and its effect was strongly emphasized by the District Court. Again there was reason to believe that the improper admission of this testimony affected the verdict. In Little v. United States, 10 Cir., 1934, 73 F.2d 861, a prosecution for using the mails to defraud, the error committed did not relate either to the admission or exclusion of testimony. There the trial court improperly permitted the court stenographer to retire with the jury during their deliberations and to read the instructions of the Court to them out of the presence of the Court and out of the presence of the defendant and his counsel. This was a substantial departure from accepted principles of criminal procedure, and on appeal the Tenth Circuit held that it could not be said from the record that such error was harmless.

In my opinion the amount of the award in this cause is consistent with substantial justice between the United States and the claimants, and the motion for a new trial is therefore overruled. Order on trial and judgment may be submitted in accordance with this opinion.