**PETRO  v.  UNITED STATES.**

**SANZO  v.  UNITED STATES.**

**Nos. 11870, 11871.**

United States Court of Appeals,
Sixth Circuit.

Feb. 12, 1954.

Edward C. Stanton, Cleveland, Ohio,
for appellant, Julius Petro.

M. A. Picciano, Cleveland, Ohio, for appellant, Joseph J. Sanzo.

John J. Kane, Jr., U. S. Atty., Frank E. Steel, Asst. U. S. Atty., Cleveland, Ohio, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

Appellants were jointly indicted for the crime of armed bank robbery in violation of Title 18, U.S.C., § 2113(a) and (d), it being charged that on August 14, 1952, by force, violence and intimidation they took from the presence and person of Charles J. Foley, branch manager and assistant treasurer of Union Savings and Trust Company, in Warren, Ohio, the sum of $71,000, the property of Union Savings and Trust Company. Both appellants were found guilty by a jury and were sentenced by the court.

■ Numerous assignments of error have been raised in the briefs, some of which, while considered, we do not discuss because no objection or exception was taken at the trial, Baldwin v. United States, 9 Cir., 72 F.2d 810, 812, or because no prejudice was shown. The principal contentions relate to the charge of the District Court on the question of identification, the denial of motion for acquittal, the use of a certain exhibit in evidence, and the admission of claimed hearsay testimony.

On the date charged, at about 9:40 a. m., Charles J. Foley, who was transporting $71,000 in currency from the main office of the Union Savings and Trust Company in Warren, Ohio, to a branch bank in the northeast section of Warren, was stopped by a car which cut in front of him. Two men wearing burlap hoods left the automobile. One of the robbers broke the right window of Foley's car with a sawed-off shotgun. The second robber stood at Foley's left side and brandished a revolver. Foley opened the left door and the robber lifted out the money bag. Several persons saw the robbery and identified the car as a gray Oldsmobile. The license number was identified as T–966–D. The robbers proceeded north on Kenilworth, east on Montclair, crossed Roselawn and turned right on Oak Knoll Avenue, running through two traffic stops without pausing. At about 9:50 a. m. Carter Alden, a college student, and his mother, Mrs. Addie Alden, were proceeding north on Oak Knoll Avenue, Carter Alden driving. They saw the gray Oldsmobile turn on Oak Knoll Avenue far to the left of the center of the street. The men in the car had discarded their burlap hoods. Both Mrs. Alden and her son observed the three occupants of the car. On the same night they were shown eight or ten pictures by an agent of the FBI. Carter Alden picked out the photograph of appellant Petro and Mrs. Alden picked out the photographs of appellants Sanzo and Petro. The next day the Aldens were taken, together with Mr. Foley, to the police line-up in Cleveland, where Carter Alden identified Julius Petro, and Mrs. Alden identified both Sanzo and Petro as being in the robbery car. At the trial both Mrs. Alden and her son repeated their positive identifications.

Mrs. Alden's testimony was observant and specific. She described the man sitting next to the driver of the Oldsmobile as follows: "Well, his features were rather small. He had dark hair and his eyes were starey and I noted particularly that his chin was rather small. He wasn't a full-faced man." While it is true that she was asked by the FBI agent if she could pick out any of the men in the photographs "as resembling the men who had passed in the car," she picked out Petro and Sanzo in the line-up at the police station in Cleveland and positively identified them in the courtroom at the trial.

■■ In this state of the record the court commented to the jury that the witness, Mrs. Alden, had "identified the man seated next to the driver as the defendant Sanzo," that in the line-up she "picked out Sanzo as the man seated next to the driver on August 14th," and that "Both of these witnesses identified Petro and Sanzo as the men they had

seen on August 14th in the Oldsmobile car on Oak Knoll Road." This statement is attacked as unfair, prejudicing the jury, taking from the jury their right to decide the facts and constituting reversible error. We think the record completely answers this contention. Both appellants were identified by Mrs. Alden and Petro was identified by her son. The trial court twice cautioned the jury to the effect that, if it found itself in disagreement with the statements made by the court as to the testimony of the witnesses or its general effect, the jury was to rely upon its own recollection and disregard the court's comment. The judge had a right to comment upon the testimony and to state that certain propositions were established by the evidence, if such was the case, so long as the charge was judicial and dispassionate and so long as the ultimate questions of fact were left to the unhampered judgment of the jury, as was the case here. Zottarelli v. United States, 6 Cir., 20 F.2d 794, 799; Myres v. United States, 8 Cir., 174 F.2d 329, 338; Graham v. United States, 231 U.S. 474, 480, 34 S.Ct. 148, 58 L.Ed. 319. Neither appellant made objection or exception to the court's statement as to identification.

■ The denial of the motion for acquittal was also proper and the verdict was amply supported by the evidence. Sanzo did not testify. It was shown that both Petro and Sanzo had been in the vicinity of the bank between July 1, 1953, and about a week before the robbery. On at least twelve to fifteen occasions during that time the appellants were observed walking up and down near the bank.

Moreover, each of the appellants was definitely linked with the robbery, it being shown that each of them had in his possession some of the stolen money. The serial numbers of the new money which formed part of the $71,000 were immediately circularized to the banks. The Bank of Ohio in Cleveland, Ohio, on September 22, 1952, received thirty-one $5 bills of the corresponding serial numbers. The deposit of these bills in the bank was made by Henry Prijatel, who had received them from Gene Gattozzi. In September, 1952, Joseph Sanzo borrowed $500 from Gattozzi and paid it back with cash in $5, $10, and $20 bills, which Gattozzi put into his personal cash box. Prijatel, the brother-in-law of Gattozzi, loaned Gattozzi $850, and about the middle of September, 1952, Gattozzi, in order to pay Prijatel, told him to take the money from the cigar box upstairs. This was done, part of the money being taken from the cigar box into which Gattozzi had put the cash he got from Sanzo. Prijatel testified that the $5 bills were "right on top of the box" and they were part of the funds circularized.

With reference to appellant Petro it was shown that $500 in twenty-five new $20 bills of the serial numbers in question was deposited at the North American Bank in Cleveland on September 19, 1952. This deposit was made by Charles W. Schaefer, who received the money from Petro's father as part of a cash down payment of $1000 on a tavern. The cash was handed over to Petro's father by his wife, Mrs. Petro, who was the family treasurer. An officer testified that when told that the cash included some of the stolen money Mrs. Petro cried and said to her son, the appellant Petro, "Tell the truth," whereupon he said "I did it." Petro then admitted to the officer that he had found some of the family funds concealed between the sheets in his mother's dresser drawer and that he had periodically taken money from this fund and used it in gambling, later replacing it. Petro testified with reference to the money traced to the robbery, "Well, I probably put it there. I probably won it gambling." Petro later denied that he had told the officer that he found anything under the sheets but said, "I gave her the money." His father recovered the $1000 cash payment from Schaefer, substituting a check for that amount at the suggestion of the appellant Petro, who admits urging that this be done and that he said it was better business to handle it by check. Since the $1000 cash down

payment had already been deposited by Schaefer he gave Petro's father ten $100 bills, so that the stolen money was retained in the bank. We conclude that the verdicts were supported by sufficient evidence.

■ Appellant Sanzo attacks the removal, without the authority of the court, of an exhibit for examination by the FBI. The exhibit, a page from a doctor's appointment record, had been introduced in evidence and on the same day was forwarded to the FBI in Washington for examination. The doctor had testified that on the date of the robbery, August 14, 1952, Sanzo had been at his office for a checkup and the appointment record was produced to substantiate this testimony. If, as the record indicates, Sanzo was at the doctor's office in Cleveland at 10:00 o'clock on the morning of August 14, an alibi was established for it is some 50 miles from Cleveland to Warren and the time of the robbery was about 9:40 in the morning. The date shown on the doctor's appointment record was August 14, 1952. The figure 4 of the date August 14 had been written in longhand above one figure of the rubber stamp and so written as completely to obliterate the figure beneath it, namely, the second figure on the rubber stamp. The FBI agent in Washington photographed the doctor's appointment record under infrared light and made copies of the negatives. This examination tended to show that the date of August 14 was not the original date on the appointment record, but that it was either August 16 or August 18. An FBI agent was permitted to testify to the effect that in his opinion the original figure over which the 4 was superimposed was an 8. No general objection was offered to this evidence, no request was made to withdraw the testimony from the jury, and the FBI agent was questioned extensively by appellant's counsel with reference thereto.

Appellants now contend that it is reversible error to permit an exhibit which has been received in evidence to be removed from the custody of the court without the knowledge or authority of the court. Title 18 U.S.C. § 2071, penalizes concealment, removal, or mutilation of any record, paper, or document filed with any clerk or officer of any United States court, but we are cited to no decision which holds that competent evidence removed from the custody of the clerk under the circumstances of this record is not admissible. It was improper to send this exhibit out of the jurisdiction without application to and approval by the court. However, on the uncontradicted facts, the exhibit was sent directly to an agent of the Federal government, was properly examined by a qualified expert and immediately returned to the custody of the court. The testimony of the FBI agent was corroborated by that of an expert who spent some six hours photographing and reproducing the exhibit and testified on behalf of the accused. We conclude that the error, if any, was not prejudicial.

■■ Each appellant also complains of the admission of certain testimony. Evidence was given in explanation of the purchase of the tavern by John Petro, Petro's father. This was preliminary to proving that $500.00 in new bills bearing the same serial numbers as those circularized after the robbery was paid by Petro's father in the cash down payment. A similar objection is made with reference to the transactions covering the payment to Gattozzi of the debt owed by Sanzo, with the result that some of the marked money came into the hands of Prijatel as payment of a debt owed Prijatel by Gattozzi. Each of these transactions directly implicated the appellants in the robbery. The evidence as to the transaction between Sanzo, Gattozzi, and Prijatel was admitted largely without objection or exception. Most of it was evidence of acts, conditions and facts rather than conversations and was relevant and competent. It is the general rule that hearsay evidence where admitted without objection may properly be considered and given its natural probative effect as if it were in law admissible. Spiller v. Atchison, T. & S. F. R. Co., 253 U.S. 117, 130, 40 S.Ct. 466, 64 L.Ed. 810; Diaz v. United

States, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500.

While objection and exception were entered to almost every question covering the transaction between Schaefer and Petro's father over the purchase of the tavern, only a few of the questions involved conversation. The testimony was relevant and the greater part of it was competent. The admission of these few questions was not prejudicial.

Certain other objections may be disposed of in more summary fashion. The District Court did not err in refusing the special charge requested on behalf of appellant Sanzo. It had been included in substance in the general charge. See Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, 857; May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994. The denial of the motion for severance was not erroneous. It was entirely within the discretion of the court. Ross v. United States, 6 Cir., 197 F.2d 660, 664; Sharp v. United States, 6 Cir., 195 F.2d 997, 999. A similar rule applies and is decisive with reference to the denial of motion for new trial. No abuse of discretion was shown in the rulings upon these motions.

The judgments of the District Court are affirmed.